IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
DECEMBER 5, 2000 Session

## STATE OF TENNESSEE v. BRYAN HERMAN DOWDY

**Direct Appeal from the Criminal Court for Lauderdale County**
**No. 6761     Joseph H. Walker III, Judge**

-------

**No. W2000-01011-CCA-R3-CD - Filed January 26, 2001**

-------

Defendant, Bryan Herman Dowdy, appeals his jury convictions for vehicular homicide by intoxication, two counts of vehicular assault, and felony evading arrest. He was sentenced to eight years and six months for vehicular homicide, two years for each of the vehicular assaults, and two years for felony evading arrest, with an effective sentence of ten years and six months. In this appeal, he raises the following issues for our review: (1) whether the evidence was sufficient to sustain his convictions; (2) whether items from his vehicle were improperly admitted; (3) whether his blood alcohol test result was improperly admitted into evidence; (4) whether the underlying DUI charge should have been severed; (5) whether he was improperly denied access to an officer's personnel file during cross-examination; (6) whether the trial court erroneously instructed the jury to use their "common sense;" and (7) whether his sentence was excessive. After our review of the record, we find all issues to be without merit and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Robert M. Brannon, Jr., Memphis, Tennessee, for the appellant, Bryan Herman Dowdy.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Tracey A. Brewer and Colin A. Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Defendant appeals his convictions by a Lauderdale County jury for vehicular homicide by intoxication, two counts of vehicular assault and felony evading arrest, for which he received an effective sentence of ten years and six months. In this court he challenges the sufficiency of the evidence, the admission into evidence of items obtained from his vehicle, the admission of his blood

alcohol test result, the denial of his motion to sever the DUI offense, the denial of access to an officer's personnel file during cross-examination, a jury instruction on "common sense," and his sentence. We affirm the judgment of the trial court.

# FACTS

Officer John Thompson of the Lauderdale County Sheriff's Department was on patrol at approximately 11:00 p.m. on May 8, 1999. He received a dispatch stating that a 1996 Chevrolet with Tennessee tag DU 421 had evaded authorities in Tipton County and was traveling north on Highway 51. After receiving a subsequent dispatch indicating the subject vehicle was on Cooper's Creek Road, Officer Thompson eventually stopped his vehicle at the intersection of Cooper's Creek Road and Highway 371. He observed the subject vehicle traveling east on Highway 371 and identified DU 421 on the Tennessee tag. After following the vehicle approximately one-half mile, Officer Thompson observed the vehicle cross the center line while negotiating a curve. Officer Thompson activated his blue lights and siren intending to stop the vehicle.

Defendant, driver of the subject vehicle, appeared to be complying with the stop. However, defendant then accelerated and fled at a high rate of speed. Defendant ran a stop sign and went around two other police cruisers attempting to stop the vehicle. When it became apparent to Officer Thompson that he could not catch the vehicle, he cut off the emergency equipment.

Shortly thereafter, defendant's vehicle went over a hill at a high rate of speed. There was a vehicle in front of the defendant; however, the defendant was unable to stop due to his speed. He attempted to pass the vehicle on the left side. Defendant's vehicle impacted the other vehicle as the other vehicle attempted to turn to the left.

Wanda Epps was the driver of the other vehicle. Also traveling in the vehicle were her twelve-year-old niece, her nine-year-old nephew, and Paul Webb. The niece was killed, and Wanda Epps and Paul Webb suffered injuries requiring hospitalization.

Two emergency medical technicians, who responded to the scene of the accident, testified that the defendant smelled of alcohol. One technician also testified that the defendant had slurred speech, stated that he started drinking around 4:00 p.m., but stated he did not know how much alcohol he consumed since 4:00 p.m. Furthermore, Lieutenant Thomas Smith of the Tennessee Highway Patrol testified that he observed several opened and unopened bottles of beer in defendant's vehicle after the accident.

Defendant was transported to the hospital for treatment. Tennessee Highway Patrol Investigator Paul Phillips asked the nurse at the hospital to draw a blood sample from the defendant. Investigator Phillips also noticed an odor of alcohol on the defendant. The blood taken from the defendant subsequently tested 0.18 gram percent ethyl alcohol.

The defendant testified at trial. He testified that he stopped work at approximately 4:30 or 5:00 p.m. on May 8, 1999. He said he purchased a six-pack of beer and drank one beer at a friend's home. Subsequently, on his way to a local tavern, he drank another beer. Upon arrival at the tavern, he said he then consumed another beer. Defendant testified he left the tavern at approximately 11:00 p.m. and began drinking another beer in his vehicle.

Defendant testified that when he was near Wal-Mart in Tipton County, a police vehicle with its flashing blue lights came up behind him. He testified that he had just obtained custody of his daughter in a "custody battle," panicked when he saw the officer since he had been drinking, and fled. He stated that subsequently, while driving in Lauderdale County, he observed the blue lights of Officer Thompson's vehicle. Defendant testified that he again panicked and fled.

Defendant testified that he was traveling approximately 70 miles per hour and never crossed the center line. He observed the two other police cars in front of him on the shoulder of the road but did not stop. He testified that when he came over a hill, he observed two vehicles in his lane of travel and another patrol car with its lights on on the side of the road. Defendant testified that, because he did not have time to stop, he tried to go around the two vehicles in the other lane. One of the vehicles then turned in front of him leading to the collision.

Defendant was indicted and charged with vehicular homicide by intoxication, two counts of vehicular assault, felony evading arrest, and DUI by alcohol concentration of .10% or more. The jury convicted the defendant on all charges. The trial court subsequently merged the DUI conviction into the vehicular homicide and vehicular assault convictions. He received an effective sentence of ten and one-half years in the Department of Correction. This appeal followed.

## WAIVER

Defendant's motion for new trial challenges the sufficiency of the evidence and his sentences. The remaining allegations are that the trial court erred in "failing to grant defendant's pre-trial motions, . . . in several rulings during the course of the trial, . . . [and] in failing to properly charge the jury or did improperly charge the jury." Other than sufficiency of the evidence and the sentences, the issues presented in this appeal are not specified in the motion for new trial.

Tenn. R. App. P. 3(e) requires issues to be "specifically" stated in the motion for new trial. Otherwise, this court cannot assume the issues were properly presented to the trial court; thus, they will not be considered in this court. *See* State v. Dykes, 803 S.W.2d 250, 254 (Tenn. Crim. App. 1990); State v. Gauldin, 737 S.W.2d 795 (Tenn. Crim. App. 1987).

The allegations in the motion for new trial are too broad relating to all issues except the sufficiency of the evidence and sentencing. In an effort to determine whether these issues were considered by the trial court, we examined the transcript of the motion for new trial. It indicates that

these issues were indeed argued before the trial court. In the interest of justice, we have elected to suspend the requirements of Tenn. R. App. P. 3(e) and address all issues on their merits.

## SUFFICIENCY OF THE EVIDENCE

Defendant attacks the sufficiency of the evidence to support his convictions. His attack is threefold: (1) a witness was improperly qualified as custodian of medical records, thereby making other evidence insufficient to establish that Wanda Epps suffered serious bodily injuries and insufficient to establish the vehicular homicide victim's cause of death; (2) intoxication was established by the improper admission of the blood test result, thereby rendering the other evidence insufficient to support vehicular homicide and the vehicular assaults; and (3) the absence of proper cause to stop defendant's vehicle renders the evidence insufficient to establish the offense of evading arrest.

We do not view the first two allegations appropriate to an examination of sufficiency of the evidence. In evaluating the sufficiency of the evidence, we view all evidence considered by the jury, whether properly or improperly admitted. *See* State v. Longstreet, 619 S.W.2d 97, 100-01 (Tenn. 1981). The remedy for improperly admitted evidence is a new trial, not dismissal for insufficiency of the evidence. *Id.* Thus, we will review these two arguments as attacks on the admissibility of evidence.

### A. Medical Records

Defendant contends the state failed to properly lay the foundation to qualify the custodian of medical records. Specifically, defendant contends the state failed to establish that the records were made at or near the time of the incident, and that there was a business duty to make such records. Consequently, defendant contends the medical records relating to Wanda Epps' injuries and the death certificate of the deceased victim were improperly introduced.

Lee Evans testified that she was the manager of health information management at the hospital and, as such, was the "record keeper." She further testified the records were prepared in the regular practice of the hospital. Defendant's objection was simply to the lack of a "proper foundation," and there was no specific argument that the records were not made at or near the time of the incident, nor whether there was a business duty to make the records. Furthermore, Wanda Epps testified that she was hospitalized and that all she remembered about the wreck was a "big explosion" as she began her turn. She further testified she was hospitalized either thirteen or fifteen days and had surgery during her hospitalization. As to the vehicular homicide, the death of the victim was clearly established by the testimony of other witnesses without reference to the questioned death certificate. Furthermore, the testimony concerning the facts and circumstances of the accident clearly allowed the jury to conclude that the accident and death were the proximate result of the defendant's intoxication. Defendant is not entitled to relief on this issue.

## B. Evidence of Intoxication

Defendant contends his blood test result was improperly admitted. We conclude otherwise later in this opinion. Accordingly, we find this issue to be without merit.

## C. Evading Arrest

Defendant contends Officer Thompson had no legal basis to effectuate the stop of his vehicle, thereby nullifying his conviction for evading his arrest. Ordinarily, an attack based upon lack of probable cause to stop an automobile must be by motion to suppress all evidence resulting from the stop. Tenn. R. Crim. P. 12(b)(3). We assume, however, that defendant relies upon Tenn. Code Ann. § 39-16-603(b)(2), which provides that it is a defense to evading arrest where the "attempted arrest was unlawful."

Defendant was convicted of felony evading arrest as defined in Tenn. Code Ann. § 39-16-603(b)(1), which provides as follows:

> It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.

It is a defense to prosecution that the attempted arrest was unlawful. Tenn. Code Ann. 39-16-603(b)(2).

Defendant's own testimony reveals that when an officer in Tipton County utilized his blue lights in an attempt to stop the defendant, the defendant intentionally fled. This action was a violation of Tenn. Code Ann. § 39-16-603(b)(1) and is a felony. *See* Tenn. Code Ann. § 39-16-603(b)(3). Officer Thompson testified that he received a dispatch indicating a vehicle with Tennessee tag DU 421 had evaded Tipton County authorities. The fact that the officer may or may not have thought that he had probable cause to make the stop is irrelevant. *See* State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997). Concluding Officer Thompson had probable cause to stop the defendant, the evidence is clearly sufficient to sustain the conviction.

## ITEMS IN DEFENDANT'S VEHICLE

Defendant contends that the search and seizure of evidence from defendant's vehicle at the accident scene and the next day were in violation of the federal and state constitutions. Specifically, defendant contends he was not under arrest at the scene or the next day; therefore, any search would not be incident to an arrest. We conclude the search was proper under the plain view doctrine and the inventory exception to the search warrant requirement.

We first note the defendant did not file a pretrial motion to suppress this evidence as required by Tenn. R. Crim. P. 12(b)(3). State v. Aucoin, 756 S.W.2d 705, 709 (Tenn. Crim. App. 1988); *see also* State v. Cook, 9 S.W.3d 98, 101 (Tenn. 1999). The trial court was not required to consider the motion but did so. We also elect to address this issue.

The items were not seized as incident to defendant's arrest. The items subject to the motion were beer bottles and other items clearly observable from the outside of defendant's vehicle. Thus, the objects were in plain view; the officer had a right to be at the defendant's vehicle at the scene; the items were discovered inadvertently; and their incriminating nature was immediately apparent. The requirements of the plain view doctrine were met. *See* State v. Hawkins, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997).

Furthermore, the defendant's vehicle was towed, lawfully impounded, and inventoried pursuant to policy. Accordingly, all items were admissible under the inventory exception to the search warrant requirement. State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).


## BLOOD ALCOHOL TEST RESULT

Defendant contends his blood alcohol test result should not have been admitted into evidence since (1) he did not consent to the test; (2) there was no probable cause to draw blood; (3) the chain of custody was not established; and (4) the expert testimony was untrustworthy. We are unable to agree with these contentions.

### A. Consent

A person who is unconscious or otherwise incapable of refusal of the blood alcohol test shall be subjected to the test; however, the results are inadmissible absent consent. Tenn. Code Ann. § 55-10-406(b). Testimony at the suppression hearing indicated that Lieutenant Smith of the Tennessee Highway Patrol observed the defendant on a spinal board at the scene of the accident. Lieutenant Smith detected a strong odor of alcohol. Subsequently, Lieutenant Smith briefed THP Investigator Phillips about the accident. Investigator Phillips then went to the hospital and asked the nurse to draw blood from the defendant. Defendant's testimony at the suppression hearing indicated that he did not refuse the withdrawal of blood, but was never asked. At trial during the cross-examination of Investigator Phillips, defense counsel produced a consent form signed by the defendant indicating the defendant's consent to draw blood. Also, at defendant's sentencing hearing, defendant contended his cooperation with authorities in allowing the withdrawal of blood should be considered as a mitigating factor. In determining rulings on pretrial motions to suppress, this court may consider not only the testimony introduced at the suppression hearing, but also the testimony introduced at trial. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). Viewing the record in its entirety, we conclude that the defendant consented to the withdrawal of blood.

We also note that even if the defendant did not consent, the blood test results would still be admissible. Vehicular homicide and vehicular assault cases are exempted from the inadmissibility provision of the failure to obtain consent. Tenn. Code Ann. § 55-10-406(e).

## B. Probable Cause

Defendant contends Investigator Phillips did not have probable cause to request the withdrawal of blood. Lieutenant Smith smelled alcohol on the defendant at the scene and observed numerous beer bottles in defendant's vehicle. He briefed Investigator Phillips prior to Phillips' request at the hospital for the withdrawal of blood.

Probable cause existed for the withdrawal of blood. Investigator Phillips had probable cause to believe that the defendant committed criminal offenses, and that the blood test would reveal the presence of intoxicants. Furthermore, exigent circumstances existed to immediately secure the blood sample; the blood test was a reasonable and competent test for measuring alcohol content; and the test was performed in a reasonable manner. Thus, the proper criteria were met. *See* State v. Jordan, 7 S.W.3d 92, 99 (Tenn. Crim. App. 1999) (citations omitted). This issue lacks merit.

## C. Chain of Custody

Defendant contends the state did not establish the proper chain of custody. Our examination of the testimony reveals otherwise.

Investigator Phillips obtained the blood sample from the nurse who withdrew the blood from the defendant. The investigator placed the tubes of blood into a kit, and it was sealed. Investigator Phillips took the sample to the TBI Crime Laboratory in Jackson. TBI Agent Bryan Eaton at the Jackson Crime Laboratory received the blood alcohol kit, broke the seal on the kit to assign a lab number and exhibit number, and resealed the kit. However, the tubes of blood themselves were never opened. The kit with its contents was then delivered to the TBI Crime Laboratory in Nashville for analysis. Evidence technician Laura Cole in the Nashville Crime Laboratory delivered the sample to TBI Agent Terri Foxx, who analyzed the sample and testified to the results.

"As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." State v. Baldwin, 867 S.W.2d 358, 361 (Tenn. Crim. App. 1993)(citation omitted). While the state is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. *Id.* This issue addresses itself to the sound discretion of the trial court, and the court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. *Id.*

The trial court concluded the state had properly established the chain of custody. We agree.

## D. Expert Testimony

Defendant contends the testimony of TBI Agent Foxx and Dr. David Stafford was untrustworthy and would not substantially assist the jury. *See* Tenn. R. Evidence 702, 703. The essence of Agent Foxx's testimony was that the blood alcohol test revealed 0.18 gram percent ethyl alcohol. Dr. Stafford's trial testimony centered around the effects of alcohol upon the human body.

Tenn. R. Evid. 702 provides that expert testimony is admissible if it will "substantially assist the trier of fact." The evidence must be relevant to a factual issue, and the expert must be qualified by specialized knowledge, skill, experience, training or education in the field of expertise. State v. Coley, ___ S.W.3d ___, ___ (Tenn. 2000). The testimony of Dr. Stafford was based upon the analysis done by Agent Foxx; therefore, these underlying facts and data must indicate "trustworthiness." Tenn. R. Evid. 703. Determinations of the admissibility of expert testimony will not be reversed absent an abuse of discretion. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

The blood alcohol test was clearly relevant to the vehicular homicide and vehicular assaults, both of which require intoxication as an element of the offense. Agent Foxx was a trained toxicologist competent to analyze the blood sample. Furthermore, Agent Foxx's testimony substantially assisted the jury in understanding the evidence. Her testimony was properly admitted.

Dr. Stafford was a professor of pathology and director of the toxicology laboratory at the University of Tennessee in Memphis. He had an extensive background concerning the effects of alcohol upon the human body. The evidence was relevant as the state had the burden of establishing intoxication as the proximate cause of the accident and injuries suffered by the victims. *See* Tenn. Code Ann. § 39-13-213(a)(2), -106(a). Dr. Stafford was qualified to testify, and his testimony substantially assisted the jury. He was properly allowed to testify as an expert witness.

Defendant attacks the reliability of the testimony of these two witnesses, pointing out certain inconsistencies and the alleged failure to properly preserve the blood sample. However, these matters go to the weight to be given their testimony, rather than its admissibility. The trial court properly determined the testimony was sufficiently trustworthy.

## MOTION TO SEVER

Defendant contends the trial court erred in refusing to sever the vehicular homicide count from the DUI *per se* count. Specifically, he contends the blood alcohol test result would not have been admissible in his DUI *per se* prosecution if that count had been severed. However, we have previously concluded that the evidence reveals that the defendant consented to the withdrawal of blood; therefore, Tenn. Code Ann. § 55-10-406 would not bar the introduction of the blood test result even if the DUI were tried separately. This issue is without merit.

**DENIAL OF ACCESS TO OFFICER'S PERSONNEL FILE**

Defendant contends the trial court erred in denying him access to Officer Thompson's personnel file, which defendant believes would demonstrate that his actions on the night of the accident were inappropriate under department policy. Specifically, he contends this would demonstrate that his and the other officers' conduct was a contributing factor to the accident.

Generally, defendants may not have access to police personnel records except upon a strong showing that they will reveal material information. State v. Butts, 640 S.W.2d 37, 39 (Tenn. Crim. App. 1982). In this event, the trial court should conduct an *in camera* inspection of the records and release only material items. *Id*.

We find no evidence that defendant requested an *in camera* inspection by the trial court. Furthermore, we are unable to evaluate the personnel file to ascertain whether it contained relevant information. Nor can we find any request by defendant that the file be placed under seal and preserved for appellate review. This issue is waived.


**JURY INSTRUCTION ON "COMMON SENSE"**

Defendant contends the trial court erred in instructing the jury that they were to use their "common sense" in deciding the case. However, the jury charge is not in the record before this court.[1] It is the duty of the accused to prepare a fair, accurate and complete account of what transpired with respect to the issues. Tenn. R. App. P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Furthermore, defendant cites no authority in support of his argument. *See* Tenn. Ct. Crim. App. Rule 10(b). This issue is waived.


**SENTENCING**

The trial court sentenced the defendant to eight years and six months for the Class B felony of vehicular homicide by intoxication, two years for each of the Class D felony vehicular assaults, and two years for the Class D felony of evading arrest creating a risk of death or injury to innocent bystanders or other third parties. The trial court ran the first two sentences concurrently and the third and fourth sentences concurrently with each other but consecutively with the prior two sentences, for an effective sentence of ten years and six months. The defendant contends the trial court erred in failing to properly apply mitigating factors, in ordering consecutive sentences, and in denying alternative sentencing. We see no reason to disturb the sentences set by the trial court.

**A. Standard of Review**

---

[1] We do note that one of our pattern jury charges provides that a juror may "rely on your own common sense" in determining credibility of the witnesses. T.P.I.–CRIM 42.04(a) (5th ed. 2000).

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments.

## B. Mitigating Factors

Defendant contends the trial court erred in failing to consider numerous mitigating factors in setting his vehicular homicide sentence six months above the minimum. *See* Tenn. Code Ann. § 40-35-113. He alleges the trial court should have considered that he acted under strong provocation and upon substantial grounds tending to justify his conduct. *See* Tenn. Code Ann. § 40-35-113(2), (3). In support of his argument, he states that he fled from authorities because he feared he would lose custody of his daughter. Furthermore, defendant contends he has shown remorse, made a good faith attempt to make restitution, has a social history indicative of strong moral character, cooperated with the authorities and has refrained from consuming alcohol since the incident.

The trial court found that the defendant had a prior criminal history consisting of a 1998 conviction for reckless driving, which resulted from a reduction from the original charge of driving under the influence. *See* Tenn. Code Ann. § 30-35-114(1). The trial court further indicated that it considered in mitigation the defendant's favorable employment record, his good character in the past, his church membership, and his Eagle Scout certification. The trial court specifically rejected the other requested mitigating factors. The trial court, therefore, slightly enhanced the sentence six months beyond the minimum sentence of eight years. We find no error in these determinations by the trial court.

## C. Consecutive Sentencing

-10-

Defendant contends the trial court erroneously ran some of the sentences consecutively. Again, we disagree.

Consecutive sentencing may be ordered if the trial court finds by a preponderance of the evidence that the defendant is a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). In the order overruling the motion for new trial, the trial court specifically found that the defendant was a dangerous offender. The trial court further found that the length of the sentences, effectively ten years and six months, was reasonably related to the severity of the offenses and served to protect the public from further criminal conduct by the defendant. *See* State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The evidence supports these findings; thus, consecutive sentencing was proper.

## D. Alternative Sentencing

Finally, defendant contends the trial court erred in failing to place the defendant on probation or community corrections. We again find no error.

We first note that defendant's sentence for vehicular homicide exceeds eight years; therefore, defendant is ineligible for probation for this offense. *See* Tenn. Code Ann. § 40-35-303(a).

It further appears defendant is ineligible for community corrections for these offenses. There are two primary avenues of eligibility for community corrections. Offenses not involving a crime against the person and non-violent crimes are eligible under the general criteria. *See* Tenn. Code Ann. § 40-36-106(a)(2),(3). However, vehicular homicide and vehicular assault are violent offenses to the person; therefore, they are ineligible for community corrections consideration under the general criteria. *See* Tenn. Code Ann. § 40-36-102(12). Furthermore, defendant is ineligible for community corrections for vehicular homicide under the "special needs" provision for community corrections. *See* Tenn. Code Ann. § 40-36-106(c). In order to qualify under the special needs provision, the defendant must be statutorily eligible for probation. State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997). Therefore, the eight year and six month sentence for vehicular homicide is ineligible for community corrections consideration.

In summary, we are unable to conclude the trial court improperly sentenced defendant to confinement in the Department of Correction.

## CONCLUSION

Based upon our consideration of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court in all respects.

_____
JOE G. RILEY, JUDGE