STATE of Tennessee, Plaintiff-Appellant,

v.

Sam LONGSTREET, Defendant-Appellee.

Supreme Court of Tennessee,
at Jackson.

July 13, 1981.

Robert A. Grunow, Deputy Atty. Gen., Nashville, for plaintiff-appellant.

Hughie Ragan, George Googe, Jackson, for defendant-appellee.

## OPINION

DROWOTA, Justice.

The defendant, Sam Longstreet, was convicted of murder in the second degree and sentenced to twenty years in the state penitentiary. The Court of Criminal Appeals, holding that the trial court improperly admitted into evidence a rifle found in the defendant's car, reversed the conviction and dismissed. The State applied for permission to appeal to this Court, contending that the search of the defendant's automobile was constitutionally proper. We granted the application primarily to review the correctness of the Court of Criminal Appeals' conclusion that there were no exigent circumstances present in this case that would justify a warrantless search of the defendant's automobile.

The victim, Carolyn Love, was shot in the face with a small caliber weapon. The shooting occurred on June 3, 1979, in the parking lot of a Jackson night spot. Immediately after the shooting, Sergeant Marvin Spencer talked with the victim's sister and aunt and learned that the defendant had been dating the victim but that they had recently been having problems. He also learned that the defendant had threatened to kill Ms. Love if she broke off their relationship. Sergeant Spencer learned that the defendant had been to the victim's resi-

dence twice the night of the shooting, once to give Ms. Love and her sister a ride home and a second time to bring her sister a sandwich. On his second visit, the defendant was told that Ms. Love was preparing to leave in a taxi. Sergeant Spencer was also told that the victim's uncle, a Mr. Thomas Robinson, had loaned the defendant his .22 caliber rifle two or three weeks prior to the shooting.

The officer attempted to contact the defendant, but defendant's brother said he had left the morning of the shooting to go to Illinois. Two days later, on 5 June 1979, the defendant voluntarily appeared at the Jackson Police Department. Sergeant Spencer advised him of his *Miranda* rights and had him formally booked. Later, Spencer again gave the defendant his *Miranda* rights and had him sign a waiver form. The Sergeant learned, upon questioning the defendant, that the .22 caliber rifle was in the trunk of defendant's car which was parked outside the police station. The defendant denied, however, the Sergeant's request for permission to look at the rifle. At this point in the questioning, the defendant requested an attorney and indicated that he wanted to stop the discussion.

Next, Sergeant Spencer sought and obtained a search warrant. He obtained the warrant by signing the following affidavit:

> Personally appeared before me, Sgt. Marvin Spencer-Jackson Police Dept., who makes oath that he has probable cause for believing and does believe that Sam Longstreet is/are in possession of the following described property, to-wit: .22 rifle believed to have been used in the shooting of Carolyn Love and any other paraphernalia pertaining to this incident contrary to the laws of the State of Tennessee, upon the following described premises to-wit: 1973 Oldsmobile, 4 door, Tennessee License number 7C8366, color blue with white top, registered to Sam Longstreet and his reason for such belief and the probable cause for such belief are that Affiant *has received information within the past 24 hours from Thomas Robinson, the uncle of Carolyn Love*, the deceased, that Sam Longstreet and victim, Carolyn Love, were dating and they had an argument and Thomas Robinson had loaned Sam Longstreet a .22 rifle and according to Dr. T. K. Ballard, County Medical Examiner, the victim, Carolyn Love was shot with a small caliber weapon.

> Affiant therefore asks that a warrant issue to search the person of Sam Longstreet and the premises herein described, either by day or by night, where he believes said .22 rifle believed to have been used in the shooting of Carolyn Love and any other paraphernalia pertaining to this incident is/are now possessed, contrary to the Laws of the State of Tennessee. (emphasis supplied)

The affidavit was false because at the time the warrant was obtained, Sergeant Spencer had not spoken with Thomas Robinson at all. His first contact with Robinson was two days later. Pursuant to the warrant, a search of the defendant's automobile produced the .22 caliber rifle.

At trial, a firearms examiner testified that the rifle found in the defendant's car was the same rifle that fired a cartridge casing which was found about six feet from the victim's head. This testimony was the primary evidence linking the defendant to the crime.

 The Court of Criminal Appeals correctly concluded that the search warrant was defective. Judge Scott's analysis was as follows:

> In *State v. Little*, 560 S.W.2d 403, 407 (Tenn.1978), our Supreme Court set forth two circumstances that authorize the impeachment of a search warrant affidavit sufficient on its face. These circumstances are: (1) a false statement made with intent to deceive the Court whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made. Recklessness may be established by showing that a statement was false when made and that the affiant did not have reasonable grounds for believing it at that time.

There is no question that the affidavit contains a false statement by the police officer making the oath. He stated that he had received information "within the past twenty-four hours from Thomas Robinson, the uncle of Carolyn Love, the deceased, that . . .". The proof clearly showed that at the time the search warrant was obtained Sergeant Spencer had not spoken with Thomas Robinson at all. His first contact with Thomas Robinson was some two days later.

All other information given in the affidavit was true, but it was ascribed to the wrong informant.

There is no evidence that the false statement was made with intent to deceive the Court. However, the statement was essential to the establishment of probable cause and it was recklessly made. An erroneous description of the source of one's information, knowing that the source is erroneous, amounts to a reckless false statement. *State v. Dana Lilly*, Tenn.Cr.App., filed at Jackson, June 19, 1980.

In addition, the affidavit for the search warrant has other shortcomings. There is no time period set forth showing when the alleged facts occurred. Rather, it is simply stated that the [defendant] and the victim were dating, that they had an argument, that Thomas Robinson loaned the [defendant] a .22 rifle, and that the victim was shot by a small caliber weapon. As the trial judge observed, these events may have happened an hour, a month, or a year before the shooting.

It is necessary that the affidavit establish a date during which the facts in question occurred so the magistrate will know whether the facts are too stale to establish probable cause at the time the search warrant is issued. *Welchance v. State*, 173 Tenn. 26, 114 S.W.2d 781 (1938). The date requirement is not a literal one, but there must be facts stated from which the issuing magistrate can conclude that the facts are sufficiently recent to support a finding of probable cause. *State v. McCormick*, 584 S.W.2d 821, 824 (Tenn.Cr.App.1979).

Finally, the search warrant is defective since it fails to set forth any facts from which a reasonable conclusion might be drawn that the evidence was in the place to be searched, i. e. the [defendant's] automobile. Such facts providing a nexus between the crime and the automobile to be searched are a critical element that must be included in the affidavit. *Whitley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565–566 [91 S.Ct. 1031, 1035–1036, 28 L.Ed.2d 306] (1971). The affidavit in this case is devoid of any facts indicating a nexus between the weapon and the [defendant's] automobile. Nothing appears to establish probable cause to believe that the gun was in the [defendant's] car, even though Sergeant Spencer knew at the time he appeared before the magistrate that the rifle was in the car.

■ The State contends here as it did in the Court of Criminal Appeals, however, that the search and seizure were proper notwithstanding the invalidity of the search warrant. The State's position is that in this case there was both probable cause and exigent circumstances and that, therefore, no warrant was even necessary. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We agree, as did the Court of Criminal Appeals, that the officer had probable cause to believe the murder weapon was in defendant's car. We cannot conclude, however, that there were exigent circumstances such as would alleviate the necessity of securing a valid search warrant. Once again, we adopt Judge Scott's analysis:

There clearly was probable cause since Sergeant Spencer knew that the [defendant's] girlfriend had been killed by a small caliber weapon after they had allegedly argued, and the [defendant] had himself informed the officer that he had a .22 caliber rifle in his car. However, there were no exigent circumstances. No amount of probable cause can justify a warrantless search or seizure absent some "exigent circumstances". *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1972).

In *Fuqua v. Armour*, 543 S.W.2d 64, 68 (Tenn.1976), the appellant was arrested in his home, pursuant to a presentment by the grand jury charging him with drug violations. On the same day as his arrest, his automobile was seized from the carport at his home without legal process authorizing its seizure. Our Supreme Court held that the seizure of his automobile was unreasonable and in violation of the United States and Tennessee Constitutions. The Supreme Court found no exigent circumstances which would warrant proceeding without a warrant.

In *Nolan v. State*, 588 S.W.2d 777 (Tenn.Cr.App.1979), Judge Dwyer found that the search of an automobile in a motel parking lot was unreasonable after the appellant was safely in police custody.

If searches of automobiles at the arrestee's home or in a motel parking lot cannot be upheld on the grounds of "exigent circumstances", then surely such a search of an automobile parked *at the police station* could not be justified.

Since the search warrant was defective and no exigent circumstances were present to justify a warrantless search, we hold that the search was illegal and that the trial court should have suppressed introduction of the rifle into evidence.

■ Finally, the State contends that it was error for the Court of Criminal Appeals to dismiss the prosecution. The court below felt constrained to dismiss the prosecution under the authority of *Burks v. United States*, 473 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In *Burks*, the Supreme Court held that the Double Jeopardy Clause prohibited retrial of a defendant whose conviction was reversed because the reviewing appellate court found the evidence insufficient to sustain the verdict of the jury. Burks had unsuccessfully presented an insanity defense in the district court. On appeal, the

Court of Appeals for the Sixth Circuit reversed, holding that the government had failed to rebut Burks' evidence of insanity. The Court of Appeals left it up to the trial court to balance the equities and decide whether or not to order a new trial. *See Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950). The United States Supreme Court held that when reversal is due to evidentiary insufficiency, any retrial of the defendant would constitute double jeopardy. In *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), decided the same day as *Burks*, the Supreme Court applied the *Burks* holding to a state court conviction.[1] In *Greene*, a Florida trial court had improperly admitted into evidence hearsay which was highly incriminating. The Florida Supreme Court reversed the conviction but remanded for a new trial. The Florida Supreme Court's *per curiam* opinion, however, indicated that the court was of the opinion that the evidence was insufficient. The United States Supreme Court could not tell from the Florida court's opinion whether it felt the remaining *legally competent* evidence was insufficient or whether the Florida court felt that *all* the evidence, including the hearsay, would have been insufficient to support a conviction. The Supreme Court, therefore, simply remanded to the Florida Supreme Court for reconsideration in light of *Burks*. It expressly reserved, in footnote nine, the Double Jeopardy implication of an appellate court ordering a new trial when the appellate court finds error in the receipt of evidence and is of the opinion that the remaining legally competent evidence is insufficient to support a conviction. This is the problem posed by this case.

■ Recently in *United States v. Harmon*, 632 F.2d 812 (9th Cir. 1980), the Court of Appeals for the Ninth Circuit discussed this issue. Harmon had been convicted in a

---

1. The *Burks* rationale has also been applied where a trial judge, acting as thirteenth juror, directs a judgment of acquittal based upon the insufficiency of the evidence. *Hudson v. Louisiana*, —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). At least two federal district courts have applied *Burks* when the district court,

reviewing a state conviction pursuant to a writ of *habeas corpus*, reverses the state conviction based upon evidentiary insufficiency. *See Delk v. Atkinson*, 498 F.Supp. 1282 (M.D.Tenn. 1980); *Accord, Bentley v. Cox*, 508 F.Supp. 870 (E.D.Va.1981).

trial in which the trial court admitted evidence obtained through a wiretap which was held on appeal to be illegal. The court held that retrial would not violate the Double Jeopardy Clause. The holding was based on at least two considerations. First, it is impossible to know what additional evidence the government might have produced had the faulty evidence been excluded at trial or what theory the government might have pursued had the evidentiary ruling of the trial court been different. A rule which would require the government to introduce all available evidence and assert every possible legal theory in anticipation of appellate reversal of trial court rulings would unduly prolong and clutter the original trial. Second, there is a risk that appellate courts would be less zealous in protecting the pretrial and trial rights of the accused if they knew reversal of a trial court's ruling would bar further prosecution.

In *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979), the court allowed a retrial of defendants who had been prejudiced by the improper receipt of hearsay evidence. The court relied on yet another reason for allowing retrial, that consideration being the undesirability of the appellate court supplanting the role of the jury as trier of fact.[2] 591 F.2d 1374. *See also, United States v. Block*, 590 F.2d 535, 544 n. 12 (4th Cir. 1978).

The conclusion reached in *Harmon, Mandel* and *Block, supra*, is supported by the language employed by the Supreme Court in *Burks*. The *Burks* court was careful to distinguish evidentiary insufficiency from trial error. It stated:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is

defective in some fundamental respect, *e. g., incorrect receipt or rejection of evidence,* incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. (emphasis supplied)

*See also, U. S. v. DiFrancesco,* —— U.S. ——, ——, 101 S.Ct. 426, 433–434, 66 L.Ed.2d 328 (1980).

For the reasons discussed, we are of the opinion that a retrial of this defendant would not violate the Double Jeopardy Clause. We, therefore, modify the order of the Court of Criminal Appeals insofar as it dismisses the prosecution. Of course, without the murder weapon, the State may choose not to retry. Our decision merely leaves this option open.

Costs of this appeal shall be taxed against the State of Tennessee.

HARBISON, C. J., and FONES, COOPER and BROCK, JJ., concur.

---

2. This consideration militates against the familiar process by which appellate courts uphold convictions when error committed at trial is deemed harmless. In that context, however, other considerations outweigh the problem of the appellate court acting as trier of fact.