IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs on April 8, 2008

## STATE OF TENNESSEE v. CHARLES RICKY PIPKIN, JR.

**Direct Appeal from the Circuit Court for Hardeman County**
**Nos. 06-01-0291, 07-01-0346    J. Weber McGraw, Judge**

_____

**No. W2007-01110-CCA-R3-CD  - Filed September 4, 2008**

_____

The defendant, Charles Ricky Pipkin, Jr., pled guilty to charges of aggravated burglary and theft over $500. He also pled guilty in a separately charged case to initiation of a process to manufacture methamphetamine and possession of methamphetamine with the intent to deliver more than .5 grams. As a condition of his guilty pleas, the defendant properly reserved several certified questions of law, challenging the legality and validity of the search warrant. Specifically, the defendant argued that the affidavit for the search warrant did not satisfy both prongs of the *Aguilar-Spinelli* test and therefore failed for lack of probable cause. He further argued that information contained in the warrant was stale and insufficient. Finally, the defendant argued that if the search warrant was invalid in the first case, then any evidence and statements used against him in the second case must also be suppressed as fruits of an illegal search. Following our review of the parties' briefs, the record, and the applicable law, we reverse the judgments of the trial court and dismiss the defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed**
**and Convictions Vacated**

J.C. MᶜLɪɴ, J., delivered the opinion of the court, in which Nᴏʀᴍᴀ McGᴇᴇ Oɢʟᴇ, J., joined and Jᴏʜɴ Eᴠᴇʀᴇᴛᴛ Wɪʟʟɪᴀᴍs, J., concurred.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, Charles Ricky Pipkin, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  BACKGROUND

The defendant was indicted on September 5, 2006, in case number 06-01-0291 for aggravated burglary and theft over $500. The defendant filed a motion to suppress and a hearing was held on December 13, 2006. The trial court denied the defendant's motion to suppress. Subsequently, the

defendant was indicted in case number 07-01-0346 for initiation of a process to manufacture methamphetamine and possession of more than .5 grams of methamphetamine with the intent to deliver. These charges were brought as a result of materials found on the defendant's property during the two searches for stolen items. The defendant filed a motion to suppress in that case and a hearing was held on May 4, 2007. During the hearing, the state and the defendant agreed to submit certified questions of law for appellate review. Upon reaching this agreement, and with the consent of the court, the defendant pled guilty to the charges in both cases. He was sentenced as a standard offender to four years for aggravated burglary, two years for theft over $500 and eight years each for initiation of a process to manufacture methamphetamine and possession of more than .5 grams of methamphetamine with intent to deliver.

Investigator Billy Davis of the Hardeman County Sheriff's Department testified that on July 6, 2006, he was investigating a burglary which occurred at the residence of Candy Hammons, the victim. Investigator Davis arrested an individual, Donald Stagner, and conducted an interview on July 14, 2006, in which Mr. Stagner acknowledged his involvement in the burglary. Mr. Stagner informed Investigator Davis that he participated in the burglary along with two other suspects, Charles Wilson and the defendant.

Investigator Davis testified that Mr. Stagner informed him that the defendant had several of the items taken in the burglary at his residence. Specifically, Mr. Stagner told Investigator Davis that the defendant had taken two CD players, a camcorder, and several DVDs. Mr. Stagner provided the names of some of those DVDs, including "Chris Rock, Bigger and Blacker," "Anger Management," and "Blue Streak." Investigator Davis stated that the list of items provided by Mr. Stagner corresponded with a description of the items provided by the victim of the burglary. Investigator Davis also stated that he had never met Mr. Stagner or used him as a confidential informant in any capacity prior to Mr. Stagner's arrest and interview. Investigator Davis asserted that Mr. Stagner was credible because his statements implicated him in the burglary and were against his own penal interests.

Investigator Davis testified that he sought a search warrant for the defendant's residence based on the information provided to him by Mr. Stagner. According to Investigator Davis, corroboration for the warrant was provided through the recovery of several items taken by Mr. Stagner in the burglary. The affidavit submitted in support of the search warrant states:

> The affiant make[s] oath that there is probable cause to believe that Charles Ricky Pipkin, Jr. and other yet unknown occupants of 2130 Buster Rd., Middleton, Hardeman County, TN. have in his/her/their possession stolen items from a burglary that occurred in this county. Items that are believed to be in the residence are two CD players, 25 CD's, 5 DVD's, Cell phone, and necklace. Some of the names on the DVD's are "Chris Rock - Bigger and Blacker", "Anger Management". The CD's are misc. burned CD's with female handwriting on them. The affiant's reasons for believing this are as follows: I spoke with Donald Stagner. Donald gave a statement agianest [sic] his penal interests that he was involved in a burglary where the above items were taken. Donald stated that Charles Ricky Pipken, Jr. and Charles Wilson were also involved in the burglary. This statement was corroborated by some of the

2

items that were taken in the burglary being recovered from Donald. This statement is believed to be reliable since it was made against his penal interests. Donald gave a description of the items that are supposed to be at Charles Ricky Pipken, Jr.'s residence and they matched the description of some of the items taken from the burglary. The burglary had been reported to HCSD and is currently under investiagation [sic].

Based on Investigator Davis's affidavit, the search warrant was issued.

Investigator Davis testified that after the search warrant was issued, it was executed the following day with the assistance of the Drug Task Force, the Hardeman County Sheriff's Office, and the Whiteville Police Department. Investigator Davis stated that he and other law enforcement officers searched the residence, the grounds, and the storage building. Upon entry into the residence, officers secured the defendant and Charles Wilson inside the house.

Investigator Davis testified that the following items were recovered as a result of their search: a syringe, green plant material, seeds, a RCA portable CD player, multiple DVDs, a Nokia cell phone, an unknown liquid substance, a white substance, liquid from a Mellow Yellow bottle, rolling papers, clear tubing, the DVDs "Blue Streak," "Passion of the Christ," and a RCA DVD player. According to Investigator Davis, two or three of the recovered DVDs had titles which corresponded to the DVDs taken from the victim's home. A portable CD player and cell phone also corresponded to items taken from the victim's home.

On cross-examination, Investigator Davis testified that he interviewed the victim over the telephone. Prior to his interview, Investigator Davis stated that the victim had prepared a hand-written list of items taken from her home and provided that list to another police officer. He agreed that the list identified two portable CD players, twenty-five CDs, five DVDs, a camcorder and case, two cell phones, a necklace, cash, and food. Investigator Davis said he did not recall looking at the victim's list prior to drafting the affidavit. He also acknowledged that he did not make any notes of his phone interview with the victim.

On cross-examination, Investigator Davis testified that he listed the defendant's address as the location where the stolen items were located. He admitted that he did not specifically identify the date the burglary occurred but merely stated in his affidavit that the defendant "[has] in his or her possession stolen items from a burglary that occurred in this county." He further admitted that he listed the items as "CD players, twenty-five CDs, five DVDs, cell phone and necklace" without identifying those items more specifically. He also acknowledged that he seized CDs and DVDs at the defendant's residence without knowing whether they were the specific items stolen from the victim or whether they legally belonged to the defendant. Investigator Davis asserted that Mr. Stagner was not a citizen informant, but that he was a criminal informant suspected of committing the crime in question. According to Investigator Davis, Mr. Stagner voluntarily waived his rights and spoke freely to him about the burglary.

Investigator Davis testified that some of the recovered CDs and DVDs were found in the woods behind the defendant's residence. Other items, including DVDs and a DVD player were

3

found inside an entertainment center in the defendant's residence. Investigator Davis admitted that not all of the items recovered were stolen property belonging to the victim, and he conceded that some of the items could have legally belonged to the defendant prior to the burglary. Investigator Davis testified that a suspicious white liquid was found in a kitchen cabinet. Rolling papers were found in a wood box on a coffee table. A quantity of pseudoephedrine, a commercial methamphetamine precursor, was found in the woods behind the residence along with some of the recovered CDs and DVDs. Investigator Davis reiterated that Charles Wilson, the third participant in the burglary, was present at the defendant's home at the time of the search.

Investigator Davis testified that after the initial search on August 15th, he returned to the defendant's property on August 21st. He stated that he obtained information from another source that the defendant still had contraband on or near his property. Investigator Davis admitted that the defendant was in jail at the time he obtained this additional information. Investigator Davis stated that he did not enter the residence but merely crossed the defendant's property to an adjacent area where he recovered additional contraband.

At the close of Investigator Davis's testimony, the defendant moved to suppress the evidence on three different grounds. First, the defendant argued that the search warrant was defective and unconstitutional because it failed to supply the required information for a valid search warrant. Second, the defendant argued that the affidavit supporting the warrant failed to meet the two prongs of the *Aguilar-Spinelli* test. Finally, the defendant contended that the information upon which the affidavit was based was stale because it did not establish a time frame for the burglary.

In its written order, the trial court denied the defendant's motion to suppress. The court determined that the affidavit filed by Investigator Davis was not stale and concluded that the burglary in question was adequately identified in the warrant with sufficient specificity. Furthermore, the court determined that Mr. Stagner's statement against penal interest, when coupled with the corroboration of items stolen by Mr. Stagner, provided a sufficient basis for the issuance of a search warrant.

## II. ANALYSIS

We begin our review by noting that the defendant pled guilty to the charges in both cases with certified questions of law. An order certifying those questions of law was signed and made a part of the appellate record. Pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the questions presented are dispositive. Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . . [the] Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:

4

(A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;

(B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2)(i)(A)-(D); *see State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). Having reviewed the record, we are convinced that the certified questions meet the criteria above, and are properly before this court.

The defendant was charged in two cases: case number 06-01-0291 and case number 07-01-0346. In case number 06-01-2091, the search warrant was obtained and executed based on the suspicion that the defendant had stolen property from the burglary at his residence. As a result of the search on August 15, 2006, and as a result of a subsequent search a few days later, officers discovered drugs and drug paraphernalia which supplied the basis for the charges against the defendant in case number 07-01-0346. On appeal, the defendant argued the following issues which were presented to the court at the plea hearing and made a part of the Order Certifying Questions of Law.

In challenging the validity of the search warrant, the defendant first argues that the warrant was based upon unreliable and conclusory allegations that did not justify the probable cause needed to support its issuance. The defendant next argues that the information and facts described in the search warrant were stale and did not establish a time frame for the burglary and issuance of the warrant. The defendant next argues that the items listed in the warrant lacked the requisite degree of specificity to establish probable cause for its issuance. The defendant finally argues that if the search warrant is found to be illegal in case number 06-01-2091, and the evidence and statements obtained as a result of that search are suppressed, then the statements, evidence, and contraband which supplied the basis for the charges in case number 07-01-0346 should also be suppressed as the fruit of an illegal search.

**A. The Search Warrant**

The defendant's certified questions essentially challenge the trial court's finding of probable cause based on the supporting affidavit. Our supreme court has stated that:

The Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article

5

I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. *Illinois v. Gates*, 462 U.S. 213 (1983); *State v. Jacumin*, [778 S.W.2d 430 (Tenn.1989)]; [Tenn. Code Ann.] § 40-6-103. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. *Lea v. State*, 181 S.W.2d 351, 352 (1944).

*State v. Casey Watson*, No. E2005-02054-CCA-R3-CD, 2006 WL 2032528, at *2 (Tenn. Crim. App. at Knoxville, July 20, 2006), *perm. app. denied* (Tenn. Nov. 27, 2006) (quoting State *v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998)).

It is well-established that an affidavit is necessary to the issuance of a search warrant in Tennessee. Tenn. Code Ann. § 40-6-103; *State ex rel. Blackburn v. Fox*, 292 S.W.2d 21, 23 (1956); *Harvey v. State*, 60 S.W.2d 420 (1933). The affidavit must set forth on its face the facts which establish probable cause before a warrant may be issued. Tenn. Code Ann. § 40-6-104; Tenn. R. Crim. P. 41(c). The issuing magistrate must make a neutral and detached judgment that probable cause is shown. *See State v. Nolan*, 617 S.W.2d 174, 175 (Tenn. Crim. App. 1981). The following requirements must be met to show adequate probable cause:

Probable cause requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act. *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999). To ensure that the magistrate exercises independent judgment, the affidavit must include more than conclusory allegations from the affiant. [*State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005)]. The affidavit must present facts upon which a neutral and detached magistrate, examining the affidavit in a commonsense and practical manner, can determine whether probable cause exists for the issuance of a search warrant. *Id.* In examining the affidavit, our standard of review is limited to a determination of whether the issuing magistrate had "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *State v. Ballard*, 836 S.W.2d 560, 562 (Tenn. 1992).

*State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006).

As noted above, the conclusory allegations of an affiant are not sufficient to sustain a warrant. *Carter*, 160 S.W.3d at 533. "'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.'" *State v. Moon*, 841 S.W.2d 336, 337-38 (Tenn. Crim. App. 1992) (quoting *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965)). "Thus, in Tennessee, probable cause to support the issuance of the warrant must appear in the affidavit and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Moon*, 841 S.W.2d at 338. "Tennessee law is clear that in determining whether or not probable cause supported issuance of a search warrant only the information contained within the four corners of the affidavit may be considered." *State v. Keith*, 978 S.W.2d 861, 870 (Tenn. 1998) (citing *Jacumin*, 778 S.W.2d at 432). "If probable cause is

absent, the magistrate is not empowered to issue a warrant." *State v. Kamara L. Whittington*, No. W2007-00148-CCA-R3-CD, 2008 WL 1891450, at *2 (Tenn. Crim. App. at Jackson, Apr. 20, 2008). "The reviewing court's standard should be whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993).

## 1. Compliance with *Aguilar-Spinelli*

The defendant argues that the search warrant lacks probable cause because it fails to establish the informant's basis of knowledge or the credibility or the reliability of the informant's information under the two prongs of the *Aguilar-Spinelli* test.

When an affidavit is used to establish probable cause for a search warrant, and the affiant relies upon information from an informant in the affidavit, the courts must distinguish between information provided by "citizen" or "bystander" informants and information provided by "criminal informants" or informants from a "criminal milieu." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999); *see also State v. Melson*, 638 S.W.2d 342, 354 (Tenn. 1982). The information provided by a citizen informant is "presumed to be reliable." *See Stevens*, 989 S.W.2d at 293; *see also Melson*, 638 S.W.2d at 356. If the information upon which probable cause is based is not of the officers' personal knowledge, but is received from a criminal informant, probable cause under our state constitution is determined by the application of the *Aguilar-Spinelli* two-pronged test. *See State v. Cedric Ruron Saine*, No. M2007-01277-CCA-R3-CD, 2008 WL 918511, at *7 (Tenn. Crim. App. at Nashville, Apr. 4, 2008). This two-prong test was developed to insure that the judgment of the issuing magistrate was independent and justified a finding of probable cause. *See Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969). The two-prong *Aguilar-Spinelli* test is summarized as follows:

> Under the first or "basis of knowledge" prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. Under the second or "veracity" prong, facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion.

*Moon*, 841 S.W.2d at 338. Both prongs of this analysis must be independently considered and satisfied to establish probable cause. *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006) (citing *Stevens*, 989 S.W.2d at 294). Independent police corroboration may compensate for deficiencies in either prong. *See State v. Powell,* 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000); *see also Jacumin*, 778 S.W.2d at 436.

Upon review of the record in the instant case, it is clear that the informant's basis of knowledge was established by his participation in the burglary with the defendant. This court has previously held that an informant's personal knowledge of criminal activity by the defendant is adequate to meet the "basis of knowledge" requirement. *See Smotherman*, 201 S.W.3d at 664. We

7

do not dispute that the informant participated in the burglary along with the defendant, made a statement against his own penal interest, and by doing so, subjected himself to possible criminal prosecution.

As to the second prong of the *Aguilar-Spinelli* test, we conclude that the warrant failed to allege specific facts which would allow the magistrate to determine the informant's credibility or the reliability of the information provided by the informant. *See Moon*, 841 S.W.2d at 338. We agree with the defendant that the statements in the warrant were merely conclusory. In the instant case, the informant stated that he was involved in a burglary where items were stolen. The warrant concludes that the statement made by the informant was reliable "since it was made against his penal interest." Corroboration of the informant's statement came from the fact that unspecified, stolen items were recovered from the informant himself. The warrant does not describe those items in any detail, or establish how it is known that those items correspond to the items taken from the victim's residence. "In short, the affidavit provided conclusory statements without stating facts as to why the conclusions were valid." *State v. Norris*, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000). In our view, merely stating that the criminal informant, who was involved in the burglary, is reliable because he was able to provide police with items he stole does not constitute sufficient, independent corroboration to establish the credibility of the informant or the reliability of the information he provided. "Corroboration of more than a few minor elements of the informant's information is necessary, however, especially if the elements relate to non-suspect behavior." *Smotherman*, 201 S.W.3d at 664. Furthermore, there is no indication that the informant had any history of police cooperation, or of providing information to police which led to prior arrests or convictions. *See id.* Some other indicia of the informant's credibility and reliability, such as independent police corroboration, was required to support the credibility of the informant and by extension, support an independent finding of probable cause. *See Powell*, 53 S.W.3d at 263.

We further note that the informant did not provide specific detailed information about the burglary or about the exact location or description of stolen items at the defendant's residence. Such detailed information may have been used to establish the informant's credibility or to show the reliability of the informant's information under the second prong of the *Aguilar-Spinelli* test. *See Spinelli*, 393 U.S. at 416-417. However, the warrant provides no indication that the informant had actual knowledge of the whereabouts of items stolen by the defendant, and he does not describe the burglary in any detail. The informant merely gave a description of "items *believed* to be in the residence" and later stated that "items that are *supposed* to be at [the defendant]'s residence . . . matched the description of some of the items taken from the burglary." (emphasis added). Therefore, the warrant failed to establish the informant's credibility or the reliability of the informant's information by other means. *See State v. Bobby Glenn Scott*, No. W2007-00373-CCA-R3-CD, 2008 WL 238128, at *5 (Tenn. Crim. App. at Jackson, Jan. 28, 2008). We conclude that because the warrant fails to establish the informant's credibility or the reliabilty of the informant's information under the second prong of the *Aguilar-Spinelli* test, the search warrant is invalid.

**2. Timeliness and Location**

The defendant next argues that the warrant lacked probable cause because it failed to state the date or time on which the burglary occurred, the address of the burglary or whether the informant saw the stolen property in the defendant's house.

"In order to establish probable cause, an affidavit must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." *State v. Norris*, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000) (citing *State v. Longstreet*, 619 S.W.2d 97, 99 (Tenn. 1981)). "The affidavit must allege that the contraband sought to be seized or the illegal activity in question exists at the moment the search warrant is to be issued." *Id.* (internal citations omitted). To this end, the affidavit must contain information that allows a magistrate to determine whether the facts are too stale to establish probable cause at the time the affiant seeks issuance of the search warrant. *See Longstreet*, 619 S.W.2d at 99.

Staleness or a lack of timeliness must be determined on a case-by-case basis. *See State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993). While the absence of a specific date is not controlling, "[i]t is necessary for a finding of probable cause that the time interval between the alleged criminal activity and the issuance of a warrant not be too great." *State v. Baron*, 659 S.W.2d 811, 814 (Tenn. Crim. App. 1983). "When the illegal activity described is ongoing, courts have generally held that the affidavit does not become stale with the passage of time." *State v. Thomas*, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991). The issuing magistrate must consider "whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence." *Meeks*, 876 S.W.2d at 124.

Upon review of the record, we note that the affidavit supporting the warrant does not provide the physical address of the burglary or the time or date the burglary occurred. Also, the affidavit does not specify the time span between the burglary and the issuance of the warrant. In addition, there is a lack of information establishing "facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." *Norris*, 47 S.W.3d at 470. Nothing in the affidavit shows that the stolen items were in the defendant's possession or at his residence after the commission of the burglary. In other words, "no nexus between the crime and the place to be searched" was established in the affidavit. *See Longstreet*, 619 S.W.2d at 99. Because we deem the burglary to be a singular event and not an "ongoing illegal activity," information regarding when and where the burglary occurred, and how much time passed between the original offense and the time the warrant was sought are of particular importance. *Id.* Again, because no dates, times or locations are specified in the affidavit, it is impossible to discern from the four corners of the affidavit whether one day, one month, or one year passed between the date of the burglary and the date the warrant was issued. *See Longstreet*, 619 S.W.2d at 99. Therefore, we conclude that the affidavit is untimely or stale.

### 3. Particularity

The defendant next argues that the warrant lacked probable cause because it did not describe the items sought in the search warrant with sufficient particularity.

9

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution require that a search warrant "contain a particular description of the items to be seized." *State v. Henning*, 975 S.W.2d 290, 296 (Tenn. 1998). "This requirement has been interpreted to mean that "the warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty." *Meeks*, 876 S.W.2d at 126 (citing W. LaFave and J. Israel, *Criminal Procedure* § 3.4(f) (2d ed. 1992)) (holding that the generalized description of "cash money, pocket books, fire arms, jewelry, check books [and] clothing items" were not sufficient to describe those items because they could have been found among other legally possessed items). "If an item can generally be found among other lawfully possessed objects of the same general classification, then greater care in the description is required." *Id.* ""[W]here the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other."" *State v. Reid*, 164 S.W.3d 286, 326 (Tenn. 2005) (quoting *Lea v. State*, 181 S.W.2d 351, 352-353 (Tenn. 1944)).

After reviewing the affidavit for the warrant, we conclude that the stolen items described as being in the possession of the defendant were described with sufficient particularity. The items were initially described in the warrant as "two CD players, 25 CD's, 5 DVD's, Cell phone, and necklace." The warrant provided further description of the stolen items. Two of the DVDs were identified by specific title and the CDs were "burned" copies which could be further identified by the "female handwriting" on them. Furthermore, we believe that police officers could verify the identity of the victim's cell phone and necklace. Therefore, we conclude that this description is adequate because "the warrant[] described the character of the property with sufficient particularity 'to enable the searcher to reasonably ascertain and identify' the items subject to seizure." *Reid*, 164 S.W.3d at 327 (internal citations omitted).

Having completed our review of the warrant, we conclude that because the affiant failed to establish the credibility or reliability of the informant's information under the second prong of the *Aguilar-Spinelli* test, failed to adequately identify the time, date or location of the burglary and failed to established a nexus between the crime and the existence of stolen items at the defendant's residence, the search warrant was invalid. The affidavit for the warrant did not possess the probable cause needed to justify its issuance by the magistrate. Police officers were without the legal authority to execute a search of the defendant's residence. Therefore, the trial court erred by denying the defendant's motion to suppress, and the defendant's convictions for aggravated burglary and theft over $500 in case number 06-01-2091 must be reversed and dismissed.

## B. Suppression of the Evidence

As his final argument, the defendant argues that if the search warrant in case number 06-01-2091 is found to be illegal, then evidence or statements made in case number 7-01-0346 must also be suppressed as "fruit of an illegal search."

Evidence or statements obtained as fruits of an illegal search warrant must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963). A search cannot be justified by what it produces, nor can an arrest be justified by the fruit of an illegal search. *State v. Cross*, 700 S.W.2d 576, 577 (Tenn. Crim. App. 1985). Having already concluded that the search warrant in case

number 06-01-2091 was invalid and illegally executed, we now therefore conclude that the original and subsequent searches of the defendant's residence and property, which yielded evidence of drugs and drug paraphernalia, was illegal. Evidence obtained as a result of these searches must be suppressed as fruits of the prior illegal search. Accordingly, the evidence against the defendant in case number 7-01-0346 must be suppressed, and the defendant's convictions for initiation of a process to manufacture methamphetamine and possession of methamphetamine with the intent to deliver more than .5 grams in case number 06-01-2091 must also be reversed and dismissed.

CONCLUSION

For the aforementioned reasons, the judgments of the trial court are reversed and the convictions are vacated.

_____

J.C. McLIN, JUDGE

11