

FILED
05/30/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2017 Session

## STATE OF TENNESSEE v. CHARLENE TRUSSELL

**Appeal from the Circuit Court for Bledsoe County**
**No. 2014-CR-33     J. Curtis Smith, Judge**

_____

### No. E2016-00003-CCA-R3-CD

_____

The Defendant, Charlene Trussell, was found guilty by a Bledsoe County Circuit Court jury of three counts of delivery of a controlled substance, three counts of the attempted sale of a controlled substance, and felony possession of drug paraphernalia. *See* T.C.A. §§ 39-17-417 (Supp. 2013) (amended 2014) (sale and delivery); 39-17-425 (2014) (drug paraphernalia); 39-12-101 (criminal attempt) (2014). The trial court merged the delivery convictions into the attempted sale convictions and sentenced the Defendant to an effective three years' probation. The court did not impose sentences or enter judgment forms for the delivery convictions. On appeal, the Defendant contends that (1) the evidence is insufficient to support her convictions and (2) as a matter of plain error, evidence of the confidential informant's previous statements were inadmissible hearsay, violated the Defendant's right to confront and cross-examine witnesses, and were inadmissible because the probative value was substantially outweighed by the prejudicial impact. Although we affirm the Defendant's convictions, we remand the case to the trial court for the imposition of sentences and the entry of judgments for the delivery of a controlled substance convictions, merger of the attempted sale convictions into the delivery convictions, and entry of corrected judgments for the attempted sale convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Convictions Affirmed; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Elizabeth G. Adams (on appeal), Dayton, Tennessee, and Thomas McEntyre (at trial), Jasper, Tennessee, for the appellant, Charlene Trussell.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Mike Taylor, District Attorney General; and Will Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In March 2014, the Bledsoe County Grand Jury returned a seven count indictment, charging the Defendant with the sale of morphine, the delivery of morphine, the sale of dihydrocodeinone, the delivery of dihydrocodeinone, the sale of clonazepam, the delivery of clonazepam, and felony possession of drug paraphernalia. On May 11, 2015, the Defendant proceeded to trial, and the jury convicted her of three counts of delivery of a controlled substance, three counts of attempted sale of a controlled substance, and possession of drug paraphernalia. The sentencing hearing was held on July 9, 2015, the judgments reflecting the sentences for the attempted sale and drug paraphernalia were filed on July 23, 2015, and the trial court's written order stating the sentencing determinations was filed on July 28, 2015. The Defendant's motion for a new trial was filed on August 28, 2015, and the trial court's written order denying the motion was entered on December 4, 2015. The Defendant's notice of appeal was filed on December 30, 2015.

As a preliminary matter, we note that although the judgments reflecting the trial court's sentencing determinations were filed on July 23, 2015, the Defendant's motion for a new trial was not filed until August 28, 2015. The thirty-day requirement for filing a motion for a new trial in Tennessee Rule of Criminal Procedure 33(b) is mandatory and cannot be extended. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *see* Tenn. R. Crim. P. 45(b). A trial court does not have jurisdiction to determine the merits of an untimely motion for a new trial, and this court is not authorized to waive the untimely filing of a motion for a new trial. *Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *see State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981).

The thirty-day time period to file the Defendant's motion for a new trial lapsed on August 23, 2015. However, because August 23 fell on Sunday, the motion had to be filed no later than August 24. The Defendant's motion was not filed until August 28, and was untimely, regardless of the trial court's subsequent order. The issues raised in her untimely motion for a new trial court are considered waived, except sufficiency of the evidence. *See Bough*, 152 S.W.2d at 460; *see also* T.R.A.P. 3(e). Furthermore, an untimely motion for a new trial will generally result in an untimely notice of appeal, but the notice of appeal is not jurisdictional and may be waived in the interest of justice. *See* T.R.A.P. 4(a) (stating the notice of appeal shall be filed within thirty days after entry of the judgment from which a defendant appeals). The Defendant's untimely motion for a new trial resulted in an untimely notice of appeal, but we waive the timely filing in the interest of justice and will consider whether the evidence is sufficient to support her convictions.

In reaching this determination, we have not overlooked the Defendant's request to grant her a delayed appeal because trial counsel failed to present any defense witnesses at the trial, failed to object to alleged inadmissible hearsay evidence of the deceased confidential informant, failed to file discovery motions, and failed to defend her properly. The Defendant is not permitted to raise an issue for the first time on appeal. *See* T.R.A.P. 36(a); *see also Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Furthermore, her request for a delayed appeal and her allegations of ineffective assistance of counsel are proper for a petition for post-conviction relief, and we caution counsel about raising ineffective assistance claims outside a petition for post-conviction relief. *See* T.C.A. §§ 40-30-113(a) (2012), 40-30-111 (2012); *Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003); *see also Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). Our review in the present appeal is limited to sufficiency of the evidence.

At the trial, Tennessee Bureau of Investigation (TBI) Agent Jeff Sills testified that he worked in conjunction with the Drug Enforcement Administration (DEA) investigating drug conspiracy cases. He said that in 2011 or 2012, Pikeville Police Chief Ronnie Byrd approached him about investigating drug-related cases in the area because the police department did not have adequate funds or officers to devote to drug enforcement. He said that a drug investigation operation was established from 2012 or 2013 to 2014, and that the Defendant was involved in one of the investigations during this time.

Agent Sills testified that Amber Humphreys worked as a confidential informant in the present case and that Ms. Humphreys had died the week before the trial. Agent Sills said that Ms. Humphreys told him that the Defendant was selling "pills," that a controlled purchase was arranged by Ms. Humphreys with the Defendant on August 28, 2013, that Agent Sills and his colleagues picked up Ms. Humphreys and drove to the "old elementary school," where Ms. Humphreys and the Defendant agreed to meet.

Agent Sills testified that before driving Ms. Humphreys to the school, he and Chief Byrd determined she did not possess drugs or money. He said that Ms. Humphreys was an IV drug user and was underweight and that it was easy to determine if she had "anything on her." He said that she pulled her front pants pockets inside out and that he patted her rear pants pockets to ensure she did not possess any drugs or money. He said she showed him and Chief Byrd that she did not have anything in her pants legs or under her arms. He said that he drove his police van to the school and that he gave Ms. Humphreys $190 cash to purchase morphine and syringes from the Defendant. He said that he took photographs of the money before giving it to Ms. Humphreys and that the money was not recovered after the drug transaction.

Agent Sills testified that he, Chief Byrd, and Ms. Humphreys traveled to the school and that Ms. Humphreys was told to wait for the Defendant at the school's picnic tables, to walk to the Defendant's SUV when the Defendant arrived, and to walk to Agent Sills's van after the drug transaction. Agent Sills said that he parked his van across the street and that he could view Ms. Humphreys and the Defendant from his location. He said that he dropped off Ms. Humphreys at the school picnic tables at 1:20 p.m., that the Defendant arrived around 1:25 p.m. in a blue Ford Explorer SUV, that Ms. Humphreys got inside the Defendant's SUV, and that the Defendant drove away. Agent Sills said that he followed the SUV, that the SUV returned to the school, that Ms. Humphreys got out of the SUV, and that the SUV left. He said he only saw the Defendant and Ms. Humphreys inside the SUV.

Agent Sills testified that Ms. Humphreys walked to his van after the Defendant left and that Ms. Humphreys had a bag containing a prescription bottle, reflecting a partially removed pharmacy label and containing different types of pills. He said the bag also contained thirty diabetic syringes. Photographs of the pills were received as exhibits, and the parties stipulated to the identification of the pills, which included one Klonopin tablet, five hydrocodone tablets, and two morphine tablets. He said that the syringes had not been used previously and that syringes were commonly used to ingest controlled substances.

On cross-examination, Agent Sills testified that although he had seen the Defendant before this incident, he did not know her personally and that he had known Ms. Humphreys for a short time before this incident. He agreed his police report reflected that Chief Byrd searched Ms. Humphreys before the controlled purchase and said that although nobody patted down Ms. Humphreys, the search procedure he described previously was followed. He said that he determined the prescription bottle came from Fred's Pharmacy but that he could not determine the person to whom the bottle belonged.

Agent Sills testified that Ms. Humphreys wore a recording device during the controlled purchase but that the voices in the recording were "mumbled." He said that he could not recall whether the Defendant's SUV windows were up or down and that a third person could have been inside the SUV. He said the Defendant drove the SUV. He said that Ms. Humphreys was told not to leave the area during the controlled purchase but that Ms. Humphreys did not control whether the Defendant drove the SUV away from the school. He said that during the transaction, he saw the Defendant's face twice, for a total of five to ten seconds.

- 4 -

Agent Sills testified that at the time of the offense, he and Ms. Humphreys had been working together on drug-related cases regularly, that Ms. Humphreys was paid for her assistance, and that Ms. Humphreys used the money to pay rent. He agreed that Ms. Humphrey's sole income was from her assistance in controlled drug purchases and said that she was paid $100 per transaction and that she participated in approximately twenty transactions. He agreed Ms. Humphreys was well connected in the local drug community. He said that he never had "problems" with Ms. Humphreys during a transaction and that he never saw her under the influence of drugs. On redirect examination, Agent Sills stated that his investigation did not indicate a third person was inside the Defendant's SUV, although he had seen multiple people inside the SUV previously.

Pikeville Police Chief Ronald Byrd testified that he participated in the controlled purchase in this case. He said that he and Agent Sills picked up Ms. Humphreys, that they ensured Ms. Humphreys did not have any drugs or money, and that they searched her purse. He said her purse was left in the van during the controlled purchase. He said that they gave money to Ms. Humphreys to purchase drugs from the Defendant and that Ms. Humphreys returned with a bag containing pills and syringes.

Chief Byrd testified that Ms. Humphreys got inside the Defendant's SUV, that the Defendant drove away, that he and Agent Sills followed the SUV, and that the SUV was out of his sight for no more than two or three seconds. He said that Ms. Humphreys did not state a third person was inside the SUV. He said that he and Agent Sills went to the Defendant's home to arrest her, that the Defendant had already been arrested and had posted bond before their arrival, and that the Defendant did not mention that another person was inside the SUV or that the police had arrested the wrong person.

On cross-examination, Chief Byrd testified that the Defendant's SUV rear windows had dark tint and that it was possible someone was inside the SUV. He said that he knew the Defendant before this case because he had previously arrested her. He said he saw the Defendant's face during the controlled purchase for approximately two minutes. He said Ms. Humphreys was paid with TBI and DEA funds. He said this was the first time he had used Ms. Humphreys as a confidential informant.

The Defendant testified that at the time of the offenses, she was undergoing chemotherapy and radiation therapy for stage two colon cancer. She said that in August 2013, the effects of the treatment required her to use a walker or a cane and that she mostly remained in bed unless she had a doctor's appointment. She said that she was diagnosed in 2011 and that her cancer had been in remission for eight months at the time of the trial. She said that she owned a blue Ford Explorer but that she did not drive it. She said that she gave the SUV to her daughter when her daughter was age sixteen, that

her daughter was age twenty-two at the time of the trial, and that when the Defendant had possession of the SUV, "Raymond" drove the Defendant to her doctor's appointments. She said that it was impossible she was driving the SUV on August 28, 2013, and that her daughter and Raymond were the only people who had access to the SUV.

The Defendant testified that Ms. Humphreys had dated the Defendant's son and that the Defendant's daughter became angry with Ms. Humphreys because Ms. Humphreys was not forthcoming with the Defendant's son about Ms. Humphreys' health. On cross-examination, the Defendant stated that she said she was home lying in bed and suffering side effects from her cancer treatments when the controlled purchase occurred.

Upon this evidence, the Defendant was convicted of three counts of attempted sale of a controlled substance, three counts of delivery of a controlled substance, and one count of possession of drug paraphernalia. This appeal followed.

The Defendant contends that the evidence is insufficient to support her convictions. She argues that the State failed to establish her identity and that the evidence showed she was unable to drive the SUV on the day of the offenses because of the effects of her cancer treatment. She also argues, in the context of sufficiency of the evidence, that Agent Sills's testimony was based upon "rank hearsay statements" and should have been excluded and that the evidence is insufficient to support her convictions without the inadmissible hearsay. She does not argue the State failed to establish the statutory elements of the offenses. The State responds that the evidence sufficiently established the Defendant's identity. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331

S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). When identity of the perpetrator is solely based upon circumstantial evidence, the facts are required to be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993); *see Reid*, 91 S.W.3d at 277. "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

In the light most favorable to the State, the evidence reflects that Ms. Humphreys was a confidential informant for TBI Agent Sills and Pikeville Police Chief Byrd and that a purchase for controlled substances and syringes was arranged between Ms. Humphreys and the Defendant. Agent Sills and Chief Byrd ensured that at the time of the controlled purchase, Ms. Humphreys did not possess contraband, and they gave Ms. Humphreys law enforcement funds to purchase controlled substances from the Defendant. Agent Sills and Chief Byrd drove Ms. Humphreys to the elementary school where the controlled purchase occurred and remained within viewing distance to observe the transaction. Although Ms. Humphreys was provided a recording device, the voices in the recording were unidentifiable. However, Agent Sills and Chief Byrd each testified that they saw the Defendant driving the blue Ford Explorer at the time of the transaction and that nobody else was seen inside the SUV. Chief Byrd testified that he knew the Defendant because he had arrested her previously. We note that although the Defendant drove away from and returned to the school, Agent Sills followed the SUV in his van and that Chief Byrd said the SUV was out of his sight for two or three seconds. After the transaction concluded and Ms. Humphreys left the SUV, Ms. Humphreys gave Agent Sills and Chief Byrd a bag containing dihydrocodeinone, morphine, clonazepam, and unused syringes.

We conclude that the evidence is sufficient to support the Defendant's convictions and that the evidence sufficiently established the Defendant's identity. Although the Defendant testified that she was home in bed at the time of the transaction because of the effects of her cancer treatments and unable to drive, the jury's verdict reflects that it credited the testimony of Agent Sills and Chief Byrd that the Defendant was the driver of the SUV, that nobody else was inside the SUV with the Defendant and Ms. Humphreys at the time of the transaction, and that Ms. Humphreys returned to Agent Sills's van afterward with controlled substances and drug paraphernalia but without the law enforcement funds. The Defendant is not entitled to relief on this basis.

In an attempt to frame her argument in the context of sufficiency of the evidence, the Defendant also asserts that Agent Sills's testimony was based upon "rank hearsay statements" and should have been excluded and that the evidence is insufficient to support her convictions without the inadmissible hearsay. We note that the sufficiency of the evidence is reviewed with improperly admitted evidence. *See State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981). In any event, we review this argument as a separate issue regarding hearsay evidence and not as a component of the Defendant's sufficiency of the evidence issue. As we have previously stated, our review in this appeal is limited to sufficiency of the evidence. The Defendant is not entitled to relief on this basis.

The parties acknowledge that the trial court improperly merged the delivery of a controlled substance convictions into the attempted sale of a controlled substance convictions, a lesser offense of delivery. *See State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993) ("In the circumstance, in which two guilty verdicts are returned as to alternative charges, the guilty verdict on the greater charge stands and the guilty verdict on the lesser charge merges into the greater charge.") (footnote omitted); *see also State v. Davis*, 613 S.W.2d 218 (Tenn. 1981). The trial court's merger of the delivery convictions into the attempted sale convictions was error. The record also reflects that no judgments were entered reflecting the convictions and sentences for the delivery convictions. Therefore, we remand this case to the trial court for the imposition of sentences for the delivery convictions and for merger of the attempted sale convictions into the delivery convictions.

Furthermore, our supreme court has concluded that "when two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document *for each count*." *State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015) (order) (emphasis in original). The court explained,

> The judgment document for the greater (or surviving) conviction should reflect the jury verdict on the greater count and the sentence imposed by the trial court. The judgment documents for the lesser (or merged) conviction should reflect the jury verdict on the lesser count and the sentence imposed by the trial court. Additionally, the judgment document should indicate in the "Special Conditions" box that the conviction merges with the greater conviction. To avoid confusion, the merger also should be noted in the "Special Conditions" box on the uniform judgment document for the greater or surviving conviction.

*Id*. Therefore, after the trial court imposes sentences for the delivery convictions and merges the lesser convictions for attempted sale into the greater convictions for delivery, the court is instructed to enter judgment documents in accord with *Berry*.

In consideration of the foregoing and the record as a whole, the Defendant's convictions are affirmed. The case is remanded to the trial court for the imposition of sentences for the delivery of a controlled substance convictions, merger of the attempted sale of a controlled substance convictions into the delivery convictions, entry of judgments for the delivery convictions, and entry of corrected judgments for the attempted sale convictions.

_____
ROBERT H. MONTGOMERY, JR., JUDGE