IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 29, 2025 Session

## STATE OF TENNESSEE v. CRISTOBAL JOSE VASQUEZ

**Appeal from the Criminal Court for Knox County**
No. 119799      Steven W. Sword, Judge

_____

**No. E2024-00317-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Cristobal Jose Vasquez, of solicitation of a minor and aggravated sexual battery, and the trial court sentenced him to an effective term of nine years' imprisonment.  On appeal, the Defendant argues that the evidence is legally insufficient to support his conviction for aggravated sexual battery.  He also asserts that the trial court erred by (1) allowing testimony concerning uncharged criminal conduct; and (2) excluding extrinsic evidence of a prior inconsistent statement by the victim or, alternatively, prohibiting him from recalling the victim to lay a foundation for that evidence.  Upon our review, we respectfully disagree and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Richard L. Gaines (on appeal) and Keith Lee Lieberman (at trial), Knoxville, Tennessee, for the appellant, Cristobal Jose Vasquez.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Hornsby, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley D. McDermott and Heather Good, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.  BACKGROUND AND INVESTIGATION

On the morning of August 11, 2019, the Defendant sent several sexually explicit text messages to the victim, his stepdaughter.  The victim, who had just turned thirteen years old, lived with the Defendant, her mother, her younger brother, her older sister, and her uncle.  During the text exchange, the Defendant commented that he would have invited the victim into his bedroom if her uncle had not been home.  He also referred to licking the victim's breasts, told her that she knew he liked her, asserted that "many stepdaughters are with their stepdads," and repeatedly instructed her to delete the messages.

The victim took screenshots of the texts and sent them to a friend, but she did not tell her mother or anyone else at the time.  However, on September 16, 2019, she reported the messages to her school guidance counselor and also disclosed that the Defendant had previously touched her inappropriately.  The guidance counselor contacted the Department of Children's Services, which began an investigation in conjunction with the Knox County Sheriff's Office.

That same day, investigators visited the victim's home.  The victim was present and provided her phone.  The Defendant was not home, but investigators spoke with him by phone.  He agreed to stay away from the children during the investigation.  The victim later underwent a forensic interview, during which she described being touched inappropriately by the Defendant while in a shed.  She said that he touched her breasts and buttocks over her clothes and that she told her mother, who she felt did not believe her.  The victim also said that her mother later called the explicit text messages a "test," although she doubted that her mother had read all the messages because she had difficulty reading in English.

On October 2, 2019, investigators interviewed the Defendant.  The Defendant admitted to sending the text messages but insisted that it was a contrived plan with the victim's mother to test the victim's desire to be with the Defendant and other older men.  The Defendant also claimed that he showed the victim's mother all of the messages before the victim disclosed them to her guidance counselor.  However, he confirmed that the victim's mother did not understand all of them because she could not read English.  The Defendant believed everything was fine after the "test" because the victim acted normally.

The Defendant further thought that the victim disclosed the messages because she was upset with the Defendant and her mother when she was not allowed to attend a party about a month later.

Regarding the inappropriate touching, the Defendant partially denied the victim's allegations. He admitted to "smacking" her on the buttocks one time when she was eight or nine but said he stopped when she told him she did not like it. He also admitted to giving her a hug while in the shed and that, at one point, the door to the shed had been closed. However, the Defendant denied ever touching the victim's breasts or touching her inappropriately over or under her clothes.

On September 29, 2021, a Knox County grand jury charged the Defendant with solicitation of a minor through electronic means and two counts of aggravated sexual battery related to the Defendant's touching of the victim's breasts and buttocks while in the shed. The case proceeded to trial on June 27, 2022.

## B.    THE TRIAL, SENTENCING, AND APPEAL

The State called several witnesses to testify about the above facts, including the victim, her guidance counselor, and law enforcement investigators. During her testimony, the victim also referred to a previously undisclosed allegation that the Defendant had "poked" her in her genital area. The Defendant did not object to these statements initially, but when the State later returned to this topic, the Defendant objected under Tennessee Rule of Evidence 404(b). During a jury-out hearing, the victim testified that the Defendant poked her genital area over her clothes while she sat on the arm of a couch. The trial court admitted the testimony under Rule 404(b), concluding that the testimony was relevant to show the Defendant's intent when he touched her while in the shed. The victim then repeated the account before the jury.

For his part, the Defendant testified and also called several witnesses, including the victim's mother. Both the Defendant and the victim's mother testified that the text messages were planned and that the victim's mother knew about the messages before they were sent. The Defendant testified that the texts were the victim's mother's idea and that he showed her the texts the same day they were sent. The Defendant also admitted to hugging the victim while in the shed but denied doing anything inappropriate, including grabbing her breasts or buttocks. He did not remember any incidents occurring on the couch.

3

The Defendant also attempted to call the family's pastor, but the court excluded his testimony. According to the Defendant, the pastor would testify that the victim had made an inconsistent statement about the incident to him. The court ruled that the Defendant failed to offer the victim a chance to admit or deny the prior inconsistent statement on cross-examination.

Following deliberations, the jury found the Defendant guilty of solicitation of a minor through electronic means and one count of aggravated sexual battery related to the touching of the victim's buttocks.[1] The trial court conducted a sentencing hearing and imposed a term of four years for the solicitation of a minor conviction and a sentence of nine years for the aggravated sexual battery conviction. The court aligned the sentences to be served concurrently and ordered the Defendant to serve the sentences in the Tennessee Department of Correction. It also ordered that the Defendant register with the Tennessee Sexual Offender Registry.

The Defendant filed a motion for a new trial, which the trial court denied on February 26, 2024. The following day, the Defendant filed a timely notice of appeal.

## ANALYSIS

In this appeal, the Defendant argues that the evidence is legally insufficient to support his conviction for aggravated sexual battery.[2] He also asserts that the trial court erred by (1) allowing testimony concerning uncharged criminal conduct; and (2) excluding extrinsic evidence of a prior inconsistent statement by the victim or, alternatively, prohibiting him from recalling the victim to lay a foundation for that evidence.

We address each of these issues in turn.

---

[1] The jury found the Defendant not guilty of the alleged touching of the victim's breasts on that same occasion.

[2] The Defendant does not challenge his conviction or sentence for solicitation of a minor by electronic means. As such, we do not address this conviction further in this appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

4

### A.    LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that the evidence was not legally sufficient to sustain his conviction for aggravated sexual battery. Specifically, he contends that touching over the clothes does not rise to the degree of physical contact necessary for a conviction under the aggravated sexual battery statute. Additionally, he asserts that the evidence did not establish that he touched the victim for his sexual arousal or gratification. The State responds that the plain language of the statute allows a defendant to be convicted of aggravated sexual battery by touching another person over the clothes and that there was abundant circumstantial evidence from which the jury could determine the Defendant's intent. We agree with the State.

#### 1.    Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

#### 2.    Aggravated Sexual Battery

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *See State v. Rimmel*, __ S.W.3d __, No. M2022-00794-SC-R11-CD, 2025 WL 717397, at *4 (Tenn. Mar. 6, 2025). As charged in this case, aggravated sexual battery is "unlawful sexual contact with a victim by the defendant," and the victim

5

is less than thirteen years old. Tenn. Code Ann. § 39-13-504(a)(4) (2018). "Sexual contact" is defined as "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id.* § 39-13-501(6) (2018). The legislature defined the term "intimate parts" as including, among other things, "the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id.* § 39-13-501(2).

In this case, Count 3 of the indictment charged the Defendant with the offense of aggravated sexual battery through the "intentional touching of the clothing covering the immediate area of [the victim's] buttocks." The victim testified that she was in a shed with the Defendant and her brother when her brother left and closed the shed door. The Defendant then grabbed the victim, pulled her close to him, and squeezed her buttocks. She also testified that she was eleven or ten years old when this incident happened. In the context of aggravated sexual battery convictions, we have observed that "it is well-settled law in Tennessee that the testimony of a victim, by itself, is sufficient to support a conviction." *State v. Thompkins*, No. E2023-00209-CCA-R3-CD, 2023 WL 8112826, at *3 (Tenn. Crim. App. Nov. 21, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*. As such, viewing the victim's testimony in the light most favorable to the State, a rational trier of fact could have concluded that the Defendant intentionally touched the clothing covering her intimate parts when she was under thirteen years of age.

In addition, the Defendant's actions could have been reasonably construed as being for the purpose of sexual arousal or gratification. We have recognized previously that "whether [the defendant] touched the victim over her clothes for the purpose of sexual arousal or gratification [is] a question of fact for the jury to determine." *State v. Welch*, No. M2016-01335-CCA-R3-CD, 2019 WL 495117, at *5 (Tenn. Crim. App. Feb. 8, 2019), *no perm. app. filed*. Moreover, "[t]he State was not required to show that Defendant actually became sexually aroused or gratified." *Id.* Instead, "[t]he statute merely requires touching that can be 'reasonably construed as being for the purpose of sexual arousal or gratification.'" *See State v. Chisenhall*, No. M2003-00956-CCA-R3-CD, 2004 WL 1217118, at *3 (Tenn. Crim. App. June 3, 2004) (citation omitted), *no perm. app. filed*.

We agree with the State that ample evidence exists to support this element, including the circumstances of the touching and the context of the Defendant's history with the victim, including his repeated inappropriate touching of her and his sexually explicit text messages to her. For example, the Defendant waited until they were alone and the door to the shed was closed before he hugged her and squeezed her buttocks. *See State v. Hayes*, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995) (noting that intent in sexual battery cases is

often proved by circumstantial evidence, including the conditions under which the touching occurred). The victim also testified that, on other occasions before the shed incident, the Defendant touched her on her buttocks and poked her genital area. *See State v. Patten*, No. M2003-00760-CCA-R3-CD, 2004 WL 911281, at *4 (Tenn. Crim. App. Apr. 29, 2004) (considering prior acts with the same victim as reflecting on whether current actions can be reasonably construed as being for the purpose of sexual arousal or gratification), *perm. app. denied* (Tenn. Oct. 4, 2024).

In addition, the Defendant sent text messages to the victim noting that he wanted to ask her to come to his bedroom; saying that he wanted to "lick" her breasts; stating, "you know I like you"; and remarking that "step girls are with [their] step dad[s]." He also instructed the victim to delete the text messages. *See State v. Cash*, No. E2007-00720-CCA-R3-CD, 2008 WL 1931564, at *6 (Tenn. Crim. App. May 2, 2008) (inferring intent to touch for the purpose of sexual arousal or gratification from defendant's instruction to the victim to "keep it a secret"), *perm. app. denied* (Tenn. Sept. 29, 2008). From this evidence, we conclude that a rational trier of fact could find that the Defendant's touching was "reasonably construed as being for the purpose of sexual arousal or gratification."

Pushing against this conclusion, the Defendant offers two arguments. First, he asserts that touching "over the clothes" does "not rise to the degree of physical contact" necessary for conviction, and he cites cases where touching occurred "under" the victim's clothes. Second, he argues that the poking incident cannot be considered in the sufficiency analysis, as this evidence should have been excluded under Tennessee Rule of Evidence 404(b).

As to the Defendant's first argument, we observe that it ignores the plain language of the statute. The definition of "sexual contact" in section 39-13-501(6) specifically imposes criminal liability for the "intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts[.]" Moreover, the Defendant disregards scores of other cases where we have affirmed convictions for aggravated sexual battery when the touching occurred over the victim's clothes. *See, e.g.*, *Thompkins*, 2023 WL 8112826, at *3; *State v. Hooper*, No. W2021-01069-CCA-R3-CD, 2022 WL 2718863, at *4 (Tenn. Crim. App. July 13, 2022), *no perm. app. filed*; *Welch*, 2019 WL 495117, at *5; *State v. Stewart*, No. E2017-00864-CCA-R3-CD, 2018 WL 287178, at *7 (Tenn. Crim. App. Jan. 4, 2018), *perm. app. denied* (Tenn. Mar. 14, 2018). The Defendant's argument is without merit.

His second argument fares no better. As we discuss below, the evidence of the poking incident was properly admissible under Rule 404(b). However, even if this

evidence were inadmissible, the legal sufficiency of the evidence "must be examined in light of *all* the evidence presented to the jury, including that which is improperly admitted." *State v. Long*, 45 S.W.3d 611, 619 (Tenn. Crim. App. 2000) (citing *Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988); *State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981)) (emphasis added). As such, considering all of the evidence placed before the jury, we conclude that a rational trier of fact could have found each of the essential elements of aggravated sexual battery beyond a reasonable doubt.

## B.     TENNESSEE RULE OF EVIDENCE 404(B)

The Defendant next argues that the trial court erred in admitting, pursuant to Tennessee Rule of Evidence 404(b), testimony from the victim that he "poked" her genital area. Although he concedes that the evidence was relevant to intent, the Defendant asserts that the testimony was admitted before it was addressed outside of the jury's presence and was not supported by clear and convincing evidence. He also contends that the danger of unfair prejudice outweighs the probative value of the evidence. The State responds that the trial court substantially complied with the procedural requirements of Rule 404(b) and properly exercised its discretion in admitting the victim's testimony. We agree with the State.

### 1.     Evidence of Other Crimes, Wrongs, or Acts

Tennessee Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." The rationale supporting the rule is that the "admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence." *State v. Gilley*, 297 S.W.3d 739, 757 (Tenn. Crim. App. 2008). However, this evidence *can* be admissible for "other purposes." Tenn. R. Evid. 404(b). Some of these "other purposes" are identified in the Rule's advisory commission comments and include motive, intent, identity, absence of mistake, or a common scheme or plan. *Id.*

Before a trial court may admit evidence of other crimes, wrongs, or acts, Rule 404(b) specifies that the following conditions must be satisfied:

(1)     The court upon request must hold a hearing outside the jury's presence;

(2)     The court must determine that a material issue exists other than conduct conforming with a character trait and must, upon request, state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3)     The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4)     The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(4); *State v. Rimmer*, 623 S.W.3d 235, 261 (Tenn. 2021).

### a.     Standard of Appellate Review

Generally, a trial court's decision to exclude or admit evidence will not be disturbed absent an abuse of discretion. *State v. Thacker*, 164 S.W.3d 208, 228 (Tenn. 2005) (citing *State v. DuBose*, 953 S.W.2d 649, 654 (Tenn. 1997)). "However, when we consider evidence that implicates Tenn. R. Evid. 404(b), we review the trial court's admissibility ruling de novo unless the trial court substantially complied with the procedures outlined in Rule 404(b)." *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014). As such, "[i]f the trial court substantially complied with Tenn. R. Evid. 404(b), we will overturn the ruling only if the trial court abused its discretion." *Id.* (citing *State v. Kiser*, 284 S.W.3d 227, 288-89 (Tenn. 2009)). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Reynolds,* 635 S.W.3d 893, 921 (Tenn. 2021) (citation and internal quotation marks omitted).

Here, our review of the record makes clear that the trial court substantially complied with the procedural requirements of Rule 404(b). The court held a jury-out hearing as soon as the Defendant objected and requested a hearing. The court identified that the evidence was relevant to a material issue other than conduct conforming with a character trait, *i.e.*, the Defendant's intent in squeezing the victim's buttocks and soliciting her through text messages. It found that the proof of the prior act was clear and convincing. The trial court finally concluded that the "highly relevant" value of the evidence outweighed any danger of unfair prejudice. As such, because the trial court substantially complied with the

9

procedural requirements of Rule 404(b), we review its admission of the contested evidence for an abuse of discretion.

### b. Admission of Poking Incident

Even though the trial court complied with the procedural requirements of Rule 404(b), the Defendant nevertheless takes issue with three aspects of the court's decision to admit the evidence. First, the Defendant argues that the court did not address the evidence outside the jury's presence before it was admitted. Second, he asserts that the proof of the poking incident was not clear and convincing and relied solely upon the victim's testimony. Finally, the Defendant contends that the danger of unfair prejudice associated with the evidence greatly exceeded its probative value. We address each of these issues in turn.

### i. Jury-Out Hearing

The Defendant first argues that evidence of the poking incident was admitted before it could be addressed outside of the jury's presence. However, because the trial court held a hearing outside of the jury's presence as soon as the Defendant requested it, it is unclear from the Defendant's argument what error he asserts occurred. From the context of the oral argument, it appears that the Defendant asserts either that the trial court had a duty to hold a hearing sua sponte or that the State had an obligation to give pretrial notice of this evidence. We respectfully disagree with both positions.

The plain language of Rule 404(b)(1) makes clear that the trial court's duty to hold a hearing arises only "upon request." Our supreme court has also recognized that "the trial court [is] not obligated to conduct [a Rule 404(b)] hearing absent a request," though it has the authority to do so. *State v. Hall*, 958 S.W.2d 679, 707 (Tenn. 1997) (appendix). Moreover, to the extent the Defendant argues that he was entitled to pretrial notice of this evidence, we have routinely held "the State is not required to give pretrial notice of its intent to introduce evidence under Rule 404(b)." *State v. Clayborn*, No. M2021-00656-CCA-R3-CD, 2022 WL 2817162, at *14 (Tenn. Crim. App. July 19, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022); *State v. Hurst*, No. E2012-01409-CCA-R3-CD, 2013 WL 5371960, at *17 (Tenn. Crim. App. Sept. 24, 2013), *perm. app. denied* (Tenn. Mar. 5, 2014). Indeed, our rule stands in contrast to Federal Rule of Evidence 404(b)(3), which expressly requires pretrial, written notice of such evidence in criminal cases.

In this case, we conclude that the trial court was under no duty to pause the proceedings sua sponte and initiate a hearing absent a request from the Defendant. *See,*

10

*e.g.*, *State v. McLaughlin*, No. E2020-01434-CCA-R3-CD, 2021 WL 3869514, at *7 (Tenn. Crim. App. Aug. 31, 2021) ("Because the Defendant did not request a 404(b) hearing, the trial court was not obligated to conduct one."), *no perm. app. filed*. The Defendant is not entitled to relief on this ground.

### ii. Proof Established by Clear and Convincing Evidence

The Defendant next argues that evidence of the poking incident was not clear and convincing because it was supported only by the victim's testimony. During the jury-out hearing, the trial court requested to hear testimony about the poking incident directly from the victim. After the testimony, the court specifically found that "she makes a credible witness" and that the poking incident was established by clear and convincing evidence.

The Defendant argues on appeal that the trial court could not have found the victim's testimony to be credible because she was subject to impeachment. However, when reviewing the admission of evidence under Rule 404(b), this court is bound by the credibility findings made by the trial court. *See State v. Clausell*, No. E2022-01662-CCA-R3-CD, 2024 WL 659956, at *30 (Tenn. Crim. App. Feb. 16, 2024) (stating that "we will not disturb the trial court's credibility determinations" in the context of reviewing a Rule 404(b) challenge to the clear and convincing nature of the evidence), *perm. app. denied* (Tenn. Aug. 13, 2024). Moreover, there is no requirement that a witness's testimony be corroborated by other evidence before it may clearly and convincingly establish a fact. *Cf. State v. Adams*, No. W2020-01208-CCA-R3-CD, 2022 WL 4114226, at *44 (Tenn. Crim. App. Sept. 9, 2022), *no perm. app. filed*.

Our supreme court has recognized that "[c]lear and convincing evidence is that which leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012). With the trial court specifically crediting the victim's testimony, we can reach no conclusion other than that the poking incident was established by clear and convincing evidence. Moreover, although the Defendant asserts that the trial court's findings were based on inadequate reasoning, he does not identify what other proof or findings were required. The Defendant is not entitled to relief on this ground.

### iii. Weighing of Probative Value and the Danger of Unfair Prejudice

Finally, the Defendant argues that the trial court erred when it found that the probative value of the poking incident outweighed the danger of unfair prejudice. More specifically, the Defendant contends that evidence of the poking incident was highly inflammatory and turned the Defendant into a "serial predator" in the eyes of the jury. The State responds that the poking incident was highly probative of intent and was not unfairly prejudicial. We agree with the State.

The Defendant's disagreement with the trial court's balancing notwithstanding, the abuse of discretion standard of review is important to our analysis. When reviewing a trial court's decision for an abuse of discretion, we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). To that end, we may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [we] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). We also may not substitute our judgment for that of the trial court simply because a party believes that another choice would have been the "best decision." *State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016).

From our review of the record, the trial court's decision was neither illogical nor unreasonable. On the contrary, the court identified and applied the correct standard of law, made findings that have support in the record, and made a reasoned choice between acceptable alternatives. *See State v. Knoblock*, No. E2004-01961-CCA-R3-CD, 2005 WL 1968444, at *5 (Tenn. Crim. App. Aug. 16, 2005) (affirming admission of a prior conviction for aggravated sexual battery on the contested issue of intent, concluding prejudicial impact did not outweigh probative value), *no perm. app. filed*. As such, even if we disagreed with the trial court's balancing of the various considerations—and we do not—we must nevertheless conclude that the trial court acted within its discretion to admit evidence of the poking incident as being relevant to the Defendant's intent on the substantive offenses. *See McCaleb*, 582 S.W.3d at 186. The Defendant is not entitled to relief on this ground.

## 2. Trial Court's Duty to Give a Limiting Instruction

Alternatively, the Defendant argues that even if evidence of the poking incident were admissible, the trial court erred in failing to issue a limiting instruction regarding the

proper use of that evidence. The State responds that this issue is waived because the Defendant did not request a limiting instruction at trial. We agree with the State.

Generally speaking, a trial court has no duty, sua sponte, to provide a limiting instruction to the jury on how it may consider particular evidence. *See State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *State v. Hartshaw*, No. M2021-01231-CCA-R3-CD, 2022 WL 4963712, at *8 (Tenn. Crim. App. Oct. 4, 2022) ("In the typical case, a trial court's obligation to give a limiting instruction is triggered 'upon request.'"), *perm. app. denied* (Tenn. Jan. 11, 2023). However, evidence offered at trial may sometimes "be admissible for some purposes but not for others." *Smith*, 24 S.W.3d at 279. When evidence is admissible for one purpose, but not for others, a party may request that the jury be instructed on how the evidence may be properly considered. *See* Tenn. R. Evid. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.").

When requested by counsel, these "limiting instructions [are] mandatory." Neil P. Cohen et al., *Tennessee Law of Evidence* § 1.05[2][a] (7th ed. 2024) (hereinafter "*Tennessee Law of Evidence*"). If other portions of the charge do not afford adequate protection, then the requested limiting instructions should be given "even if the judge believes the instructions are unnecessary or that the evidence is of little value[.]" *Id.* These principles certainly apply in the context of Rule 404(b) evidence placed before the jury. *State v. Little*, 402 S.W.3d 202, 210 (Tenn. 2013) ("Even when such evidence [under Rule 404(b)] is admissible, however, trial courts should, when asked to do so, 'restrict the evidence to its proper scope and instruct the jury accordingly.'" (quoting Tenn. R. Evid. 105)).

However, where a defendant does not request that the jury be instructed on the proper use of Rule 404(b) evidence, he or she waives the issue as a ground for relief on appeal. *See State v. Jarman*, 604 S.W.3d 24, 51 (Tenn. 2020) (finding that a defendant waived his complaint that the trial court did not give a 404(b) limiting instruction because he "did not request such an instruction and did not object to the omission of a limiting instruction"). In this case, the Defendant did not request a contemporaneous limiting instruction, even when the trial court noted that it did not anticipate giving such an instruction. We also see no evidence that he requested a special instruction as part of the formal charge.

Accordingly, we conclude that the Defendant has waived any issue with respect to a limiting instruction. *See* Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever

action was reasonably available to prevent or nullify the harmful effect of an error"); *State v. Jones*, 450 S.W.3d 866, 901 (Tenn. 2014) ("It is the responsibility of the Defendant, however, to request the appropriate limiting instructions [under Rule 404(b)]."). The Defendant is not entitled to relief.

## C.  PRIOR INCONSISTENT STATEMENTS AND RECALL OF THE VICTIM

Finally, the Defendant argues that the trial court erred when it excluded extrinsic evidence of a prior inconsistent statement made by the victim. Alternatively, the Defendant argues that the trial court abused its discretion by prohibiting him from recalling the victim to lay a proper foundation to introduce the extrinsic evidence.

The State responds that the trial court properly exercised its discretion in both cases. It argues that the Defendant knew about the prior inconsistent statement at the time the victim testified initially, but failed to question her about it. Thus, it asserts that counsel's oversight, if it was such, does not constitute the type of "extraordinary case" that requires admitting the testimony or forcing a child victim of sexual abuse to testify a second time. We agree with the State.

### 1.  Background

During his proof, the Defendant attempted to call the pastor at a church the victim's family attended. During an offer of proof made outside of the jury's presence, the pastor testified that the Defendant told him that he had been accused of "improperly touching" the victim. The pastor then later asked the victim whether the Defendant "had done something illegal," and the victim responded that he "had done nothing illegal to her." The Defendant offered the victim's statement to the pastor expressly to impeach her trial testimony.

The State objected to the pastor's testimony, arguing that the victim could not be impeached with a prior inconsistent statement because she was not confronted with that statement during her earlier testimony. The trial court agreed and further noted that extrinsic evidence would not even be allowed had she admitted to making the statement in her earlier testimony.

The Defendant then requested that he be permitted to recall the victim and confront her with her earlier statement to the pastor. The trial court again denied the request,

14

concluding that the witness was a minor and a sexual abuse victim. It also found that the Defendant had an opportunity to cross-examine the victim earlier in the trial and that he knew of the pastor's testimony at the time of his questioning.

### 2. Tennessee Rule of Evidence 613(b)

The Defendant first argues that the pastor should have been permitted to testify that the victim told him the Defendant had "done nothing illegal." The Defendant further asserts that even if he did not confront the victim with this statement during her original cross-examination, the court should have permitted the pastor to testify about this prior inconsistent statement in the interests of justice. We respectfully disagree.

### a. Standard of Appellate Review

We review the trial court's decision to permit or deny impeachment by a prior inconsistent statement for an abuse of discretion. *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989); *State v. Hughes*, No. E2019-01185-CCA-R3-CD, 2021 WL 3818135 at *25 (Tenn. Crim. App. Aug. 27, 2021), *perm. app. denied* (Tenn. Jan. 13, 2022). In addition, we also review a trial court's decision to admit extrinsic evidence of a prior inconsistent statement for an abuse of discretion. *See Hunter v. Ura*, 163 S.W.3d 686, 698 (Tenn. 2005) (reviewing such decisions for an abuse of discretion); *State v. Bates*, No. E2014-01741-CCA-R3-CD, 2015 WL 9019818, at *6 (Tenn. Crim. App. Dec. 15, 2015), *perm. app. denied* (Tenn. May 5, 2016).

### b. Impeachment by a Prior Inconsistent Statement

A witness's testimony may be discredited, or impeached, in several ways. One way is to show that the witness's testimony is inconsistent with something the witness said at another time. *See State v. Bell*, 512 S.W.3d 167, 196 (Tenn. 2015) ("A prior statement by a witness that is inconsistent with his trial testimony is valuable impeachment evidence, and our Rules of Evidence provide for the introduction of prior inconsistent statements for impeachment purposes."). The rationale behind this principle is that "[t]he presence of an inconsistent statement may convince the trier of fact that the witness has lied in one of the two statements or is careless in making statements." *Tennessee Law of Evidence* § 6.13[2][a].

Sometimes, counsel may seek to impeach a witness simply by asking the witness about the prior inconsistent statement. Where the witness unequivocally admits to making the prior statement, the jury may consider that admission and any explanation for the inconsistency to evaluate the credibility of the witness's trial testimony. *See id.* Sometimes, however, the witness may deny making the prior statement or not remember doing so. The witness may also equivocate or be uncertain about making the prior statement. In these situations, a party may wish to introduce extrinsic evidence, or outside proof, to show that the witness made the prior statement at issue. *See State v. Foust*, 482 S.W.3d 20, 41 (Tenn. Crim. App. 2015).

This extrinsic evidence could include a document or a recording containing the previous statement. It may also be another person who heard the witness make the prior statement. *See State v. Reid*, 164 S.W.3d 286, 313-14 (Tenn. 2005) ("The extrinsic evidence may be the written or recorded content of the prior statement itself or the testimony of another witness as to the content of the prior written or oral statement." (citation and internal quotation marks omitted)). Tennessee Rule of Evidence 613(b) provides the mechanism for impeaching a witness with extrinsic evidence. In relevant part, that rule provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Tenn. R. Evid. 613(b).

With one exception discussed below, extrinsic evidence of a prior inconsistent statement is inadmissible unless: (1) the witness is asked whether the witness made the prior inconsistent statement; and (2) the witness denies or equivocates to having made the prior inconsistent statement. *State v. Martin*, 964 S.W.2d 564, 565 (Tenn. 1998). "The interest behind the rule is one of fairness to the witness. It is unfair to attempt to impeach a witness's character for truthfulness with proof of statements made on other occasions without first giving the witness an opportunity to respond." *State v. Flood*, 219 S.W.3d 307, 319 (Tenn. 2007). To that end, the witness's attention should "be drawn to the place, persons present, time of the statement, and to the substance of the statement before extrinsic evidence of the prior inconsistent statement could be used to impeach the witness'[s] credibility." *Martin*, 964 S.W.2d at 567.

In this case, the Defendant proffered the testimony of a pastor at a church the victim's family attended. During the proffer, the pastor testified that he asked the victim whether the Defendant "had done something illegal." The victim responded that he "had done nothing illegal to her." The Defendant offered the victim's statement expressly to impeach her trial testimony.

However, although the victim was subject to cross-examination earlier in the trial, the Defendant did not ask her whether she had made the prior statement, and she was not allowed to explain or deny it. As the trial court correctly noted, if the Defendant had confronted the victim with the statement and she admitted to making it, no extrinsic evidence or witness testimony would have been admissible. We conclude that because the Defendant failed to comply with Tennessee Rule of Evidence 613(b), the trial court acted within its discretion by excluding the pastor's testimony regarding a prior statement made by the victim.

### c.        Admission of the Statement in the Interests of Justice

Pushing against this conclusion, the Defendant argues on appeal that the "interests of justice" required the trial court to allow the pastor's testimony without the proper foundation because of the extraordinary circumstances present in the case. He asserts that these circumstances include that the victim's testimony was uncorroborated and that her credibility was a significant issue at trial. We respectfully disagree that the trial court abused its discretion.

The "interests of justice" exception permits "extrinsic proof of the prior inconsistent statement to be introduced despite the fact that the witness had no opportunity to explain or deny the prior statement." *Tennessee Law of Evidence* § 6.13[d]. Our supreme court has recognized that the flexibility of this exception is intended "to deal with the extraordinary case in which the strict application of the rule . . . would lead to injustice." *Martin*, 964 S.W.2d at 568; *see also State v. Vader*, No. M2011-02394-CCA-R3-CD, 2013 WL 1279196, at *4 (Tenn. Crim. App. Mar. 28, 2013) ("This clause provides flexibility to deal with the *extraordinary case* in which strict application of these foundational requirements would lead to injustice." (emphasis in original)), *no perm. app. filed*. To that end, this exception may allow admission of extrinsic evidence when the inconsistent statements "were discovered after a witness testified" and when following the proper procedure would "prematurely alert[] collusive witnesses to evidence available for impeachment." *Martin*, 964 S.W.2d at 568. The interests of justice may also be furthered where "a witness testifies on direct exam, [but] then absconds or dies or becomes too ill to participate in cross-examination." *Tennessee Law of Evidence* § 6.13[d]. Otherwise, this "exception will be used rarely." *Id.*

In this case, we see no extraordinary, or even particularly unique, circumstances that would have *required* the trial court to admit the pastor's testimony. The Defendant does not allege that he was unaware of the victim's prior statement before she testified. He also

17

does not dispute that he failed to allow her to admit or deny the prior inconsistent statement during cross-examination. The fact that the witness's credibility is of particular importance in the case will not alone justify departing from the requirements of Rule 613(b), particularly where the party had knowledge of the statement and an opportunity to lay the appropriate foundation. *See Martin*, 964 S.W.2d at 568 (declining to admit extrinsic evidence in the interests of justice when "[t]he state was aware of [the witness's] prior inconsistent statement and had ample opportunity to lay a foundation before it attempted to admit the extrinsic evidence."); *State v. Ladd*, No. M2020-00264-CCA-R3-CD, 2021 WL 2099892, at *13 (Tenn. Crim. App. May 25, 2021) (declining to admit extrinsic evidence in the interests of justice when "defense counsel was aware of the victim's statement, when and where it was made, who was present, and the circumstances under which she made the statement"), *no perm. app. filed*; *Vader*, 2013 WL 1279196, at *4 (declining to admit extrinsic evidence in the interests of justice when the defendant "had ample opportunity to lay a foundation" before he attempted to introduce extrinsic evidence). We conclude that the trial court acted well within its discretion to exclude the pastor's testimony. The Defendant is not entitled to relief.

### 3. Recalling the Victim After Her Testimony

Alternatively, the Defendant argues that the trial court abused its discretion by refusing to allow him to recall the victim to lay a foundation to admit the pastor's testimony. The State responds that the trial court did not abuse its discretion given that the witness was a child victim of sexual abuse and that the Defendant was aware of the prior statement when she testified originally. We agree with the State.

Generally speaking, "the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *State v. James*, 315 S.W.3d 440, 460 (Tenn. 2010) (citation and internal quotation marks omitted). In the proper exercise of this discretion, a trial court may allow the recall of a witness who has already testified. *See, e.g.*, *State v. Caughron*, 855 S.W.2d 526, 539 (Tenn. 1993).

To recognize that a trial court has discretion to allow a party to recall a witness is to acknowledge that it has authority to act within a range of acceptable alternatives. *See Willis*, 496 S.W.3d at 729. Although our courts have not fully explored the nature of the trial court's discretion in this regard, they have addressed the exercise of discretion in several contexts. For example, a trial court has discretion to allow a party to recall a witness:

- to address a matter that arose later during the cross-examination of other witnesses, *see State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010); and

- to correct a misstatement in the original testimony, *see McFarlin v. State*, 381 S.W.2d 922, 924 (Tenn. 1964); or to clarify testimony offered earlier in the trial, *see State v. Peacock*, No. 01C01-9704-CR-00118, 1998 WL 380006, at *6 (Tenn. Crim. App. July 9, 1998), *perm. app. denied* (Tenn. Jan. 11, 1999).

On the other hand, we have affirmed a trial court's refusal to allow the recall of a witness in the following circumstances:

- when the witness was to be questioned on a topic about which the witness had previously testified, *see Keel v. State*, No. M2019-00612-CCA-R3-PC, 2020 WL 5407489, at *8 (Tenn. Crim. App. Sept. 9, 2020), *no perm. app. filed*; and

- when the witness was a child witness and had been extensively cross-examined during his or her original testimony, *see State v. Alcorn*, No. C.C.A. 88-195-III, 1989 WL 60376, at *2 (Tenn. Crim. App. June 7, 1989), *perm. app. denied* (Tenn. Sept. 25, 1989).

In this case, the trial court declined to allow the victim to be recalled by the Defendant, offering three reasons. First, the court was concerned that the victim was a child witness in a sexual abuse prosecution. Second, the victim had already been subject to cross-examination by the Defendant. Finally, the pastor's information was not new information discovered after the victim's testimony, but had been known by the Defendant before he cross-examined her. Each of these considerations was appropriate, and the court made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. As such, we conclude that the trial court acted within its considerable discretion in denying the request to recall the minor victim. *See Alcorn*, 1989 WL 60376, at *2.

The Defendant counters that the need for the recall was occasioned by mere oversight and that the renewed examination would have been brief. He also argues that the impeachment evidence was important to the issue of the victim's credibility. While these arguments also have weight, the trial court reasonably concluded that they were outweighed by the other considerations in the case, including that the Defendant knew of the information during the original cross-examination of the minor victim. The

19

Defendant's disagreement with the trial court's weighing of the factors in a discretionary decision does not show that the court abused its discretion. *See McCaleb*, 582 S.W.3d at 186. The Defendant is not entitled to relief on these grounds.

## CONCLUSION

In summary, we hold that the evidence was legally sufficient to support the Defendant's conviction for aggravated sexual battery. We also hold that the trial court properly admitted testimony concerning uncharged conduct pursuant to Tennessee Rule of Evidence 404(b). Finally, we hold that the trial court acted within its discretion to exclude extrinsic evidence of a prior inconsistent statement by the victim and to prohibit the Defendant from recalling her after she had been fully subject to cross-examination. Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE